Derrick Chance HARDY and Robert T. Hardy, Appellant–Defendants,

v.

Ashly Megan HARDY, Appellee–Plaintiff.

No. 09A02–0905–CV–389.

Court of Appeals of Indiana.

Aug. 11, 2009.

David W. Stone IV, Stone Law Office & Legal Research, Anderson, IN, Attorney for Appellant.

R. Tod Groff, Miller, Tolbert, Muehlhausen, Muehlhausen, Groff, Damm, P.C., Logansport, IN, Attorney for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Robert M. Hardy ("Father") and Derrick Chance Hardy ("Son") challenge the trial court's order denying their request for reformation of the underlying warranty deed and ordering the partition and sale of the land as requested by Ashly Megan Hardy ("Daughter").

We affirm.

### ISSUE

Whether the trial court erred in denying Father and Son's request for reformation of the warranty deed to include a life estate for Father.

### FACTS

The facts most favorable to the judgment are as follows: Father originally owned a total of eighty acres of Cass County farmland, including his residence on a ten-acre tract. In 2004, Father faced methamphetamine drug charges in Oklahoma and Indiana, and he owed federal income taxes for a period spanning five years. On October 15, 2004, in an effort to avoid the possibility of having to pay a hefty controlled substance excise tax in the event of his conviction in Indiana;[1] the possible forfeiture of his land;[2] a possible fine in Oklahoma, if convicted, ranging from $25,000.00 to $500,000.00;[3] and the potential for a federal income tax lien[4] attaching to his land, Father purposefully conveyed seventy-acres of his farmland to Son and Daughter as joint tenants with rights of survivorship.

Daughter was seventeen years of age at the time of the conveyance, and neither Father nor Son informed her of the conveyance. She first learned of her ownership interest approximately one year later in December of 2005, when Father and Son asked her to convey, by quitclaim deed, two acres of the land to Son and his then-wife to build a house. Daughter "didn't really understand that [she] was co-owner of [the land]" at the time. (Tr. 51). Initially reluctant, she eventually signed a quitclaim deed conveying the two acres; the deed was recorded on December 9, 2005. Father failed to pay Daughter $4,000.00 for the conveyance as he had promised.

Father was subsequently convicted of the methamphetamine offenses and was incarcerated in Oklahoma and Indiana from June of 2005 through May 15, 2006, and from September 24, 2007 through December 1, 2008, respectively. While Father was incarcerated in Oklahoma, he instructed Son, as his attorney-in-fact, to effect a conveyance to Son of Father's interest in the remaining ten acres of Father's farmland to avoid forfeiture, seizure, or a tax lien from attaching to the land. Son effected the conveyance by a quitclaim deed recorded on June 29, 2005.

Also, from 2005 to 2008, Father and Son entered into several agreements to lease the sixty-eight acres to Phillip Miller. Pursuant to three different lease agreements, they collected over $52,000.00 in rent proceeds, which were not disclosed to

---

1. Ind.Code § 6–7–3–5.

2. I.C. § 34–24–1–1(a)(5).

3. Oklahoma Statutes § 63–2–415(C)(4).

4. 26 U.S.C. § 6321.

Daughter, but rather, were deposited into an account for Father's sole benefit.

In the meantime, Daughter began to make inquiries about her interest; her questions went ignored by both Father and Son. Subsequently, on May 27, 2008, Daughter filed a complaint wherein she requested partition and sale of the real estate, as well as an accounting from Son, and determination of any credit or reimbursements due and owing to her. (App.12).

On July 9, 2008, Son filed an answer wherein he moved the court to deny Daughter's request for partition and to grant his petition to "reform the deed to reflect the intent of the parties including [Father] and [to] impose a constructive trust to protect the interests of Father, Son, and Daughter." (App.14–15). Son moved to join Father as a real party in interest. On October 10, 2008, the trial court granted Son's motion and ordered Father joined as a party defendant.

During the discovery phase of this action, Daughter learned about the cash lease agreements and the rental proceeds pocketed by Father. The trial court conducted a bench trial on December 5, 2008. Father, Son, Daughter, and Mother testified. Although signatures purporting to be Daughter's appeared on the three lease agreements, Daughter testified that she had no knowledge of the lease agreements prior to their being signed. She testified further that she neither signed nor authorized anyone to sign them on her behalf. Father testified that he had signed Daughter's signature to at least one of the lease agreements, possibly more; however, he claimed to have done so with her permission.

Dana Hardy ("Mother"), Father's former wife and mother of Son and Daughter testified on behalf of Father. She testified that Father had conveyed the seventy acres to Son and Daughter with the intention of reserving a life estate for himself, entitling him to the use and income from the land during his lifetime; and upon his death, Son and Daughter would inherit the land outright. (App.198).

On January 9, 2008, the trial court issued an order, containing, in pertinent part, the following findings of fact and conclusions of law:

5. At the time of the conveyance, daughter was a minor, provided no monetary consideration for the conveyance, and had no knowledge of the conveyance until December 2005, when daughter was approached by son to join in a new conveyance, conveying two acres of the original seventy-acre conveyance to son and son's wife.

6. The conveyance was made by father to hinder, delay, or defraud potential creditors (including the government) occasioned by father's pending criminal prosecutions in two states.

7. Father alleges the conveyance included either a constructive or implied trust to reconvey the property back to him upon demand, which trust (if it existed) would have defeated father's intent in making the conveyance to begin with, see I.C. 30–4–3–2(b).

8. One who vests the legal title to his property in another, for the purpose of putting out of reach of, and defrauding his creditors, cannot recover the property on the theory that there was no consideration for the conveyance or that there was an agreement to reconvey.

9. Daughter denies making any oral promise to reconvey the seventy-acre parcel back to her father.

10. No fraud or wrongdoing is found attributable to the son or daughter in procuring the conveyance from father to son and daughter.

11. The conveyance was made after father's consultation with legal counsel. Father represents that legal counsel was informed of the father's intent and prepared the instrument to affect [sic] the conveyance in accordance with the father's intent.

12. The mistake of which father complains is one of law, and not fact. The court is therefore not permitted to reform the deed imposing a constructive or implied trust on behalf of father.

13. As a result of the original conveyance (and two acres conveyed therefrom), son and daughter are cotenants of the remaining sixty eight acres.

14. A cotenant who has received more than such cotenant's just share of the rent and profits as to the common property may be required to account there for [sic] to the other cotenant in an action for partition.

15. In accordance with I.C. 32–17–4–1 et. seq. and the facts of this case, daughter has filed a complaint for partition of the conveyance and accounting which is her right to prosecute.

16. The court determines since the conveyance that the father has no legal interest in the remaining sixty eight acre parcel.

17. Since the conveyance, the subject real estate has generated cash rent income, less real estate taxes, of forty-five thousand six hundred sixty dollars ($45,660.00).

18. The cash rent income above, was received by the son, and deposited in accounts benefitting the father.

19. That cash rent income should have been split equally between cotenants, son and daughter.

20. Daughter has not received any of the aforementioned cash rent income and is entitled to cash or set off in the partition equivalent to twenty-two thousand eight hundred and thirty dollars ($22,830.00).

21. The subject sixty eight acre tract is valued at three hundred ninety four thousand four hundred dollars ($394,400.00), being the equivalent of five thousand eight hundred dollars ($5,800.00) per acre.

22. The court now determines that a partition should be made between son and daughter of the remaining sixty eight acre tract. The court does enter an interlocutory judgment that partition be made with son receiving **forty-four** (44%) percent of said tract, and daughter receiving fifty-six (56%) percent of said tract.

23. The court determines that the land for which partition is demanded cannot be divided without damage to the owners, son and daughter. Therefore the court orders the entire sixty-eight acre tract sold in accordance with I.C. 32–17–4–12.

24. The son and daughter through legal counsel shall proceed in accordance with I.C. 34–55–4–3, to determine for sale the appraised cash value of said sixty-eight acre tract.

(Order 1–3) (emphasis in original). Father and Son now appeal.

## DECISION

Father and Son argue that the trial court's judgment denying reformation of the deed is clearly erroneous. We cannot agree.

 Our standard of review is as follows: Where, as here, the trial court has made special findings of fact and conclusions of law, we apply a two-tiered standard of review, considering whether the evidence supports the findings and whether the findings support the judgment. *Balvich v. Spicer*, 894 N.E.2d 235, 242

(Ind.Ct.App.2008). We neither reweigh the evidence nor assess the credibility of witnesses, but consider only the evidence most favorable to the judgment. *Id.* Sua sponte findings control only as to the issues they cover. *Gibbs v. Kashak,* 883 N.E.2d 825, 827–28 (Ind.Ct.App.2008). A general judgment will control as to the issues upon which there are no findings. *Id.* A general judgment entered with findings will be affirmed if it can be sustained on any legal theory supported by the evidence. *Id.*

■ The trial court's findings and conclusions will be set aside only if they are clearly erroneous, that is, if the record contains no facts or inferences supporting them. *Id.* A trial court's judgment is clearly erroneous "when there is no evidence supporting the findings or the findings fail to support the judgment ... and when the trial court applies the wrong legal standard to properly found facts." *Fraley v. Minger,* 829 N.E.2d 476, 482 (Ind.2005). "In order to determine that a finding or conclusion is clearly erroneous, an appellate court's review of the evidence must leave it with the firm conviction that a mistake has been made." *Gibbs,* 883 N.E.2d at 827–28.

■ "While we defer substantially to findings of fact, we do not do so for conclusions of law"; we apply a *de novo* standard of review to conclusions of law and owe no deference to the trial court's determination of such questions. *Mueller v. Karns,* 873 N.E.2d 652, 657 (Ind.Ct.App.2007).

1. *Equity*

Father and Son seek relief in equity— namely reformation of the underlying warranty deed to reserve a life estate for Father's benefit. We initially cite to some noteworthy "maxims of equity." 12 I.L.E. Equity (2001).

'[O]ne who comes into equity must come with clean hands'; a principle that denies 'relief to one whose conduct concerning the matter in controversy has been fraudulent, illegal, or unconscionable' as to another such that the other party is harmed. In application, this principle 'means that one who seeks relief in a court of equity must be free of wrongdoing in the matter before the court.'

Another maxim provides that 'whomever seeks equity must do equity'; a principle whereby 'relief which involves perpetration of an injustice will be denied.' Thus, 'he who would invoke the aid of a court of equity 'must show that he has done equity to him of whom he complains.'

Yet another maxim provides that 'equity follows the law.' In application, this means that 'an equitable right cannot be founded on a violation of law.'

*Hopper Resources, Inc. v. Webster,* 878 N.E.2d 418, 422 (Ind.Ct.App.2007) (internal citations and quotations omitted).

*a. Unclean Hands*

■ We concur with the trial court that Father and Son are not entitled to reformation because they have unclean hands and are not "free of wrongdoing." In its findings of fact and conclusions of law, the trial court found that "the conveyance was made by [F]ather to hinder, delay, or defraud potential creditors (including the government) occasioned by [F]ather's pending criminal prosecutions in two states." (Order 2).

■ The "unclean hands" doctrine demands that one who seeks relief in a court of equity must be free of wrongdoing in the matter before the court. *Galloway v. Hadley,* 881 N.E.2d 667, 678 (Ind.Ct.App.2008). The alleged wrongdoing must have an immediate and necessary relation

to the matter being litigated. *Id.* For the doctrine of unclean hands to apply, the misconduct must be intentional. *Id.* The purpose of the unclean hands doctrine is to prevent a party from reaping benefits from his misconduct. *Id.* The doctrine is not favored by the courts and is applied with reluctance and scrutiny. *Id.*

The evidence in the record lends considerable support to a finding that Father had unclean hands at the time he executed the warranty deed, and the subsequent cash lease agreements pertaining to the land. Father admitted that he purposefully conveyed the seventy acres to Son and Daughter to thwart possible efforts by his creditors—the governments of Indiana and Oklahoma, and the I.R.S.—to seize, sell or otherwise dispose of the property in satisfaction of his debts.[5] Further, Son testified that Father conveyed both the seventy-acre tract and the ten acre tract because "[h]e didn't want to loose [sic] it, ... he wasn't sure what was gonna go down in[ ] the drug case, whether they would try to seize it or whatever, so he wanted to protect it." (Tr. 163).

The evidence further reveals that Son also has unclean hands. He was complicit in Father's scheme to conceal valuable real estate lease agreements from Daughter. He ignored Daughter's requests, as a co-owner, for information regarding her interest in the land; aided in contracting and leasing the land to Phillip Miller without her knowledge; withheld information as to the lease agreements from her; collected rental proceeds from the lease agreements and deposited the funds into an account solely for Father's benefit; and failed or refused to account to her regarding the farm income. Thus, because neither Father nor Son is "free of wrongdoing" in this matter, we agree with the trial court that they are not entitled to the equitable remedy of reformation. *Galloway*, 881 N.E.2d at 678.

### b. Failure to "do equity"

■ Likewise, in addition to the reasons noted above, Father and Son are not entitled to reformation because both have failed to "do equity" by Daughter. In general, courts will "not entertain a petition for equitable relief when the party requesting such relief refuses and fails to do equity on his part." *Burns–Kish Funeral Homes, Inc., v. Kish Funeral Homes, LLC,* 889 N.E.2d 15, 20 (Ind.Ct. App.2008).

The evidence demonstrated that Father originally conveyed the land to Son and Daughter, as co-owners, without reserving any interest for himself. Then, he and Son secretly negotiated and executed three valuable lease agreements with Phillip Miller; Father signed Daughter's name, without her authorization, to at least one of the agreements, and possibly others; and Father and Son secreted away over $52,000.00 in rental income for the sole benefit of Father. It was only after Daughter learned of her interest, demanded her share of the rental income, and filed her lawsuit that Father sought to reform the warranty deed to include a life estate for

5. Despite Father's contention that there was never any real danger of his losing the land, we find that under the circumstances, his fear of losing the land was reasonably justified, given that if he were convicted of the methamphetamine charges, all of the involved government entities would have had a legitimate claim against his land. It is undisputed that Father deliberately attempted to avoid possible hefty fines, state and federal tax liens being lodged against the property, and possible forfeiture. *See* Ind.Code § 32–18–2–14 ("A debtor's conveyance of property is fraudulent as to a creditor if the debtor made the transfer with actual intent to defraud the creditor, or without receiving a reasonably equivalent value in exchange for the transfer.")

himself. Pursuant to the warranty deed, Daughter, as co-owner, is rightfully entitled to her proportionate share of the farm income. Under the preceding circumstances, the law would not favor allowing Father to benefit or to escape the consequences of his actions. Thus, we will not entertain Father and Son's petition for reformation because they have failed to do equity by Daughter.

### 2. *Life Estate; Implied Trust*

■ Father and Son argue that they are entitled to reformation of the warranty deed because Father's original intent, when he executed the warranty deed, was to retain a life estate in the land, whereby the land would pass to his children upon his death. Father also contends that the conveyance included an implied trust requiring Son and Daughter to reconvey the property to him upon demand. We are not persuaded.

The record is clear as to Father's primary motivation for the initial conveyance. At trial, both Father and Son testified that Father effected the conveyance in order to place his property beyond the reach of his creditors—specifically, to evade government efforts to seize or lien his land. It is questionable whether Father's retention of an interest in the land would have served his stated aims because any ownership interest attributable to him (i.e., a life estate) could likely still be reached by his creditors.

■ Nor are we persuaded that the language in the warranty deed conveyance created an implied trust requiring Son and Daughter to reconvey the property back to Father upon demand. Such an arrangement would have defeated Father's intent in making the conveyance in the first place. For example, Indiana Code section 30-4-3-2(b) provides that "[w]hen trust property is properly sold or disposed of by

the trustee to a third person, the liens against a beneficiary's interest in the trust estate, if any, will be divested from that property and will attach to the interest of that beneficiary in the proceeds from its sale or other disposition." Applied to the instant facts, the unavoidable consequence would be that the rental proceeds from Father's lease agreements would still have been subject to the very liens that Father initially sought to escape.

Moreover, we have previously held that "[o]ne who vests the legal title to his property in another, for the purpose of putting it out of reach of, and defrauding his creditors, cannot recover the property on the theory that there was no consideration for the conveyance or that there was an agreement to reconvey." *Estates of Kalwitz v. Kalwitz*, 717 N.E.2d 904, 913 (Ind.Ct.App. 1999) (citing *Bellin v. Bloom*, 217 Ind. 656, 28 N.E.2d 53 (1940)).

Accordingly, we find no error; the evidence of record supports the trial court's finding that Father has failed to establish that he had retained a life estate or that the warranty deed conveyance included an implied trust for his benefit.

### 3. *Clear and Convincing Evidence of Unilateral Mistake*

■ Finally, Father and Son's claim for reformation must fail because they did not demonstrate by clear and convincing evidence that a unilateral mistake was made in the execution of the deed.

In its findings of fact and conclusions of law, the trial court found that it was "not permitted to reform the deed" because "[t]he mistake of which [Father] complain[ed][wa]s one of law, and not fact." (Order 7). However, in more recent years, Indiana appellate courts have modified the

rule under exceptional circumstances.[6] In *Wright v. Sampson*, 830 N.E.2d 1022, 1028 (Ind.Ct.App.2005), we held that where a party to a deed given as a gift seeks reformation, the deed may be reformed *if the party seeking reformation has demonstrated by clear and convincing evidence that a unilateral mistake was made in the execution of the deed.* Clear and convincing evidence "indicat[es] that the thing to be proved is highly probable or reasonably certain." Black's Law Dictionary 596 (8th ed.2004); *see Romine v. Gagle*, 782 N.E.2d 369, 384 (Ind.Ct.App.2003) ("Clear and convincing evidence" is "an intermediate standard of proof greater than a preponderance of the evidence and less than proof beyond a reasonable doubt and requires the existence of a fact to be highly probable").

The instant case involves a unique factual circumstance wherein the trial court was faced with issues of fraud, unclean hands, and failure to do equity. The trial court determined that Father had not met his evidentiary burden, and we cannot find that the trial court erred in concluding that it was not "highly probable or reasonably certain" that a unilateral mistake had been made in the execution of the warranty deed.

First, by Father's own admission and Son's testimony, Father's original intent in undertaking the conveyance was wholly effectuated at the time the deed was executed. Father wanted to transfer ownership of his land to Son and Daughter in an effort to escape government attachment of the property. Second, had the warranty deed contemplated an implied trust or if Father had retained a property interest in

the land, such would have defeated his intent in making the conveyance in the first place because the land would still have been subject to attachment. Lastly, we are not persuaded by Father and Son's testimony, given that the evidence shows that together they repeatedly acted against Daughter and her interests from the very beginning. Father, in particular, has shown himself to be extremely calculating when it comes to safeguarding his own personal interests. He coordinated with Son to conceal the valuable lease agreements; pocketed considerable rental proceeds for his own personal benefit; and went so far as to forge Daughter's signature when it served his interest to do so. Father has consistently, and without impunity, manipulated the circumstances to his benefit. Inasmuch as Father contends that his counsel made an error in drafting the warranty deed, which error resulted in his intent not being realized, we have only his and Son's self-serving assertions that such is the case and are not persuaded. Thus, we conclude that Father's present attempt to seek reformation of the warranty deed by injecting new terms (i.e. creation of a life estate or implied trust) appears to be yet another attempt to manipulate the circumstances to his benefit.

Based upon the foregoing, we cannot say that the trial court's judgment is clearly erroneous. The record does not support a finding by us that (1) there is no evidence supporting the findings; or (2) that the findings do not support the judgment. *See Fraley*, 829 N.E.2d at 482 ("judgment is clearly erroneous where there is no evidence supporting findings or findings fail to support judgment; *and* when trial court

---

**6.** Even more recently, in *Carlson v. Sweeney, Dabagia, Donoghue, Thorne, Janes & Pagos*, 895 N.E.2d 1191, 1199 (Ind.2008), the Supreme Court held that with regard to testa-

mentary trusts, reformation is appropriate whether the testator's intent has not been effectuated, regardless of whether the underlying mistake is a mistake of fact or law.

applies the wrong legal standard to properly found facts").

Affirmed.

BAILEY, J., and ROBB, J., concur.