## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 17 2017, 8:35 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark R. McKinney
McKinney & Malapit, P.C.
Muncie, Indiana

ATTORNEY FOR APPELLEE

Ralph E. Dowling
Muncie, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| James Showalter,<br>*Appellant-Respondent,*<br><br>v.<br><br>Tanya Ray,<br>*Appellee-Petitioner.* | February 17, 2017<br><br>Court of Appeals Case No.<br>18A02-1608-JP-1849<br><br>Appeal from the Delaware Circuit Court<br><br>The Honorable Linda Ralu Wolf, Judge<br><br>Trial Court Cause No.<br>18C03-1601-JP-2 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Respondent, James Showalter (Showalter), appeals the trial court's modification of child support and award of attorney fees to Appellee-Petitioner, Tanya Ray (Ray).

We affirm in part, reverse in part, and remand with instructions.

# ISSUES

Showalter raises three issues which we consolidate and restate as:

(1) Whether the trial court abused its discretion in calculating the modified child support; and

(2) Whether the trial court abused its discretion in awarding attorney fees.

# FACTS AND PROCEDURAL HISTORY

Showalter and Ray were in a brief relationship in late 2009 and early 2010, out of which one child, I.S. (Child), was born on October 3, 2010. On March 30, 2011, an order on paternity was issued, which established Showalter's child support obligation in the amount of $42 per week and awarded him parenting time with the Child in accordance with the Indiana Parenting Time Guidelines. Because he had not exercised parenting time with the Child for nearly four years, Showalter filed a verified petition to establish parenting time on December 15, 2015, requesting a modified visitation schedule with phased-in visits in an attempt to create a bond with the Child. On May 2, 2016, Ray filed

a petition to modify child support. Four days later, on May 6, 2016, the trial court conducted a hearing on all pending petitions.

[5] During the hearing, Showalter testified that he is employed, making $13 an hour for a forty-hour work week, with overtime paid at $19.50 per hour. His 2015 tax return reflected a gross income of $46,574. He clarified that he did not expect to make a similar gross income in 2016 because his income in 2015 was due to record snow and a premium which he had been paid for working 24-hour shifts in January. He explained that he had already had 37 days off in a timespan of four months in 2016, compared to the 21 days off in 2015. However, he assured the trial court that he "will make forty-two thousand (42,000) this year. I don't care how many days I have to work." (Transcript p. 55). He was "going to give it [his] all but [he didn't] know if [he'll] be able to get it back up [he']s pretty far behind[.]" (Tr. p. 55). He also added that "[b]ut on the good side of it [he] was promised that here in the next three (3) weeks [he] go[es] for [his] CDL on the good side of it [he] should be able to go from thirteen (13) to fifteen ($15.00) an hour [] that if [he] passed [his] CDL he'll [get] a raise." (Tr. p. 56). He also testified that he had a prior born child, who lives with the child's mother and for whom he pays child support of $65 per week. He was "current with no arrears." (Tr. p. 50). He does not carry health insurance on either of the children. In addition, Showalter conceded to the trial court that he was subject to a court-ordered restitution order in the amount of $300 per month as a result of a theft conviction.

[6] In turn, Ray testified that she is "a professional artist" and was currently working another job as well. (Tr. p. 78). Because of major back issues, she only made $393 in 2015. Ray had started a new position the day before the hearing, making $7.25 per hour for 20 to 28 hours per week. She stated that the Child was on a scholarship in daycare, which was a "free ride." (Tr. p. 80). However, the scholarship would lapse on June 3, 2016, and then daycare cost would be $208 per week. Ray chose to leave the Child in daycare five days per week because "[i]f you leave him there three (3) days it's a different rate but not much different." (Tr. p. 81).

[7] At the conclusion of her testimony, Ray requested attorney fees in the amount of $1,963. When asked to respond to the attorney fees' request, Showalter initially stated, "I'd like to not respond to any of this," but then requested the trial court if he could ask some questions pertaining to "the paperwork here on the money side." (Tr. p. 86). Showalter then addressed the court, "If it brings peace in this and I can have some time to do it I'd be glad to pay him nineteen sixty-three (1,963) with no argument and no question." (Tr. p. 87). The court then took the matter under advisement.

[8] On May 31, 2016, the trial court issued its Order, concluding in pertinent part:

> 11. Mother and Father both agree that any parenting time for Father with [Child] must be phased in at this time due to [Child's] lack of familiarity with his Father.
>
> * * * *

13. To effectuate the parenting time in stages, it is appropriate and necessary for [Child] to receive counselling and guidance through the Suzanne Gresham Center of Meridian Health Services in Muncie, Indiana. Court orders that Father and Mother participate in the counselling at the direction of the counsellor or therapist.

14. Since Father voluntarily chose to forego his parenting time for so many years and since he is gainfully employed on a full-time basis, he is ordered to pay the costs associated with the counselling to phase in his parenting time. These costs include any fees imposed for the participation of [Child], Father, and Mother.

15. The phasing in of parenting time shall be determined by the counsellor, keeping in mind what is best for [Child] and with the expected cooperation of both Father and Mother.

* * * *

20. There has been a substantial and continuing change of circumstances such that the previous order of the [c]ourt is no longer reasonable and the same should be modified.

21. Father's usual income is approximately $42,000 per year, including occasional overtime hours.

22. Mother is employed part-time and [c]ourt attributes minimum wage to her.

23. Pursuant to [Ray's] Exhibit L, child care expenses for child support worksheet purposes is $139.37 per week paid by Mother.

24. Pursuant to the child support worksheet prepared by [c]ourt for the time period April 29, 2016 to June 3, 2016 which is attached hereto and made a part hereof, the weekly child support obligation of the Father is $120.00 since a scholarship offsets the cost of child care. Pursuant to the second child support worksheet attached hereto and made a part hereof, after June 3, 2016 the weekly child support obligation of Father shall be $223 due to the child care expense being reinstated.

* * * *

28. Court orders that Father pay the attorney fees of Mother in the sum of $1,963, [] within the next ninety (90) days.

(Appellant's App. Vol II, pp. 27, 28, 29).

[9]   Showalter now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

## I. *Modification of Child Support[1]*

[10]   Father contends that the trial court abused its discretion when modifying his child support obligation. In reviewing a trial court's order on a request to modify child support, we will reverse for an abuse of discretion. *Holtzleiter v.*

---

[1] Initially, in her appellee's brief, Ray contends that Showalter waived all issues on appeal by stating, "I'd like to not respond to any of this." (Tr. p. 86). Upon review of the record, we find otherwise. Showalter's statement is a response to the trial court's question if he had any questions for Ray. After making the disputed statement, Showalter nevertheless requested the trial court if he could "ask about some of the paperwork here on the money side." (Tr. p. 86). In light of the issues involved and the vagueness of the statement, we conclude that Showalter did not waive his appeal to the trial court's modification of child support.

*Holtzleiter*, 944 N.E.2d 502, 505 (Ind. Ct. App. 2011). An abuse of discretion occurs only when the decision is clearly against the logic and effect of the facts and the circumstances before the court, including any reasonable inferences that may be drawn therefrom. *Id*. The court has previously observed that "the importance of first-person observation and preventing disruption to the family settings justifies deference to the trial court." *Id*.

[11] Here, the trial court entered findings *sua sponte*. *Sua sponte* findings control only as to the issues they cover and a general judgment will control as to the issues upon which there are no findings. *Walters v. Walters*, 901 N.E.2d 508, 510 (Ind. Ct. App. 2009) (citing *Gibbs v. Kashak*, 883 N.E.2d 825, 827-28 (Ind. Ct. App. 2008)). A general judgment entered with findings will be affirmed if it can be sustained on any legal theory supported by the evidence. *Id*. When a court has made special findings of fact, an appellate court reviews sufficiency of evidence using a two-step process. *Id*. First, it must determine whether the evidence supports the trial court's findings of fact; second, it must determine whether those findings of fact support the trial court's conclusions of law. *Id*. Findings will be set aside if they are clearly erroneous. *Id*. Findings are clearly erroneous only when the record contains no facts to support them either directly or by inferences. *Id*. A judgment is clearly erroneous of it applies the wrong legal standard to properly found facts. *Id*. In order to determine that a finding or conclusion is clearly erroneous, an appellate court's review of the evidence must leave it with the firm conviction that a mistake has been made. *Id*.

[12] While Showalter does not dispute Ray's request to modify the child support *per se*, he does challenge the trial court's calculation of his modified child support obligation. The Indiana Child Support Guidelines (Guidelines) aid in the determination of the amount of child support that should be awarded and provide a measure for calculating each parent's share of the child support. *In re Paternity of G.R.G.*, 829 N.E.2d 114, 118 (Ind. Ct. App. 2005). "There is a rebuttable presumption that the amount of the award resulting from the application of the Indiana Child Support Guidelines is the correct amount to be awarded." *Id*. (citing *Lea v. Lea*, 691 N.E.2d 1214, 1217 (Ind. 1998)).

[13] To determine whether a child support order complies with the child support guidelines, we must first know the basis for the amount awarded. *Heiligenstein v. Matney*, 691 N.E.2d 1297, 1303 (Ind. Ct. App.1998). "Such revelation could be accomplished either by specific findings or by incorporating a proper worksheet." *Id.* Accordingly, since 1989, the Guidelines have required, in all cases in which the trial court is requested to order support, that both parties complete and sign, under penalty of perjury, a child support worksheet to be filed with the court verifying the parents' incomes. *See* Ind. Child Support Guideline 3(B)(1); *Payton v. Payton*, 847 N.E.2d 251, 253 (Ind. Ct. App. 2006). Here, only Ray submitted a completed, but unsigned, child support worksheet. While neither party submitted a verified child support worksheet, the trial court made its own calculations based on the findings in its Order and "prepared" its own child support worksheet. (Appellant's App. Vol. II, p. 28). As "the Guidelines are not meant to be a trap for the unwary but are intended to lead

the way to a fair result in a complicated area of law," we will review Showalter's contentions based on the calculations made by the trial court. *Holtzleiter*, 944 N.E.2d at 506.

[14] Showalter presents this court with three challenges to the trial court's calculations. Specifically, he maintains that the trial court abused its discretion by (1) including overtime in his income calculation; (2) not including the support paid for a prior-born child; and (3) including non-work related child care costs. We will discuss each contention in turn.

## 1. *Overtime*

[15] Showalter contends that the trial court abused its discretion in determining his "usual income" as "approximately $42,000 per year, including occasional overtime hours." (Appellant's App. p. 28). Focusing on the "weekly gross income of $808," he claims that he "would have to work a regular forty (40) hour work week plus fifteen (15) hours of overtime every week for the entire year." (Appellant's Br. p. 14).

[16] When fashioning a child support order, the trial court's first task it to determine the weekly gross income of each parent. *In re G.R.G.*, 829 N.E.2d at 118. "Weekly gross income" is broadly defined to include not only actual income from employment but also potential income and imputed income from "in-kind" benefits. *Id*. Guideline 3(A) encompasses in the definition of "gross income" "income from salaries, wages, . . . , bonuses, [and] overtime[.]"

[17]    During the hearing, Showalter testified that he makes $13 an hour for a forty-hour work week, with overtime paid at $19.50 per hour. Showalter also stated that in the next three weeks "[he] go[es] for [his] CDL on the good side of it [he] should be able to go from thirteen (13) to fifteen ($15.00) an hour." (Tr. p. 56). His 2015 tax return, submitted into evidence, reflected a gross income of $46,574. He clarified he did not expect to make a similar gross income in 2016 because his income in 2015 was due to record snow and a premium he had been paid for working 24-hour shifts in January. He explained that he had already had 37 days off in a timespan of four months in 2016, compared to the 21 days off in 2015. However, he assured the trial court that he "will make forty-two thousand (42,000) this year. I don't care how many days I have to work." (Tr. p. 55). He was "going to give it [his] all but [he didn't] know if [he'll] be able to get it back up [he']s pretty far behind[.]" (Tr. p. 55). Therefore, because the evidence supports the trial court's findings, which in turn support its conclusion, we cannot say that the trial court erred in calculating Showalter's child support obligation based on a weekly gross income of $808. As always, should Showalter's income hereafter diminish such that the child support order becomes unreasonable, he is free to petition the trial court to modify the same.

## 2. *Prior Born Child*

[18]    The Guidelines state that to compute the weekly adjusted income, the amount paid to support prior born children must be taken into account, regardless whether this amount is established by way of a court order or actually paid

without a court order. *See* Child Supp.G. 3(C)(2) & (3). In this regard, Showalter maintains that the trial court erred by not including his child support obligation for a prior born child.

[19] The evidence reflects that during trial, Showalter testified that he has two children: Child and an older daughter, born out of a different relationship. Showalter told the trial court that he "pa[id] sixty-five dollars ($65.00) per week and I'm current with no arrears." (Tr. p. 50). Later during the hearing, when discussing the calculations to be made on the worksheet, Showalter again reiterated his support obligation towards the prior born child. The trial court responded, "Well, and that is part of the calculation through the child support worksheet I would [make] and how much and you did testify earlier about how much you're ordered to pay and I did write it down." (Tr. p. 87). Despite this assurance, the trial court did not include this obligation in the worksheet.

[20] As the evidence at the hearing indicates the existence of a child support obligation for a prior born child, and the trial court did not include this in its calculation nor did the trial court enter findings explaining its reason for deviating from the Guidelines, we conclude that the trial court erred and we remand for clarification of its award or re-calculation of Showalter's child support obligation. *See Dye v. Young*, 655 N.E.2d 549, 551 (Ind. Ct. App. 1995). ("If the court deviated from the guidelines, it should enter findings to provide a worksheet demonstrating its calculations, as well as written findings setting forth the factual basis for the deviation.").

### 3. *Child Care Expenses*

[21]     The trial court issued two worksheets—the first, effective from April 29, 2016, until June 3, 2016, and the second, effective after June 3, 2016—to take into account Ray's changed situation with respect to her child care expenses. Both worksheets include the same basic numbers, with exception of the child care expenses. Showalter now challenges both worksheets' computations, claiming that none of these child-care expenses were work-related.

[22]     Child Support Guideline 3(E) provides that "[c]hild care costs incurred due to employment or job search of both parent(s) should be added to the basic obligation. It includes the separate cost of a sitter, day care, or like care of a child or children while the parent works or actively seeks employment." The commentary to the Guidelines indicates that work-related child care expenses are added to the basic support obligation in arriving at the total child support obligation. Ind. Child Supp.G. 3(E), Cmt. 1.

[23]     With respect to the worksheet effective until June 3, 2016, the trial court determined Showalter's portion of the child care expenses to amount to $0 per week. The record indicates that prior to June 3, 2016, the Child was on a scholarship in daycare, which was a "free ride." (Tr. p. 80). Accordingly, no daycare expenses—regardless of whether they were work-related—existed before June 3, 2016.

[24]     With respect to the worksheet effective from June 3, 2016, the trial court included Ray's child care expenses of $139.37 per week in its calculation of

Showalter's child support obligation. Ray testified that she had just started a new position the day before the hearing, working 20 to 28 hours per week. She explained that after the day care scholarship lapsed on June 3, 2016, she would pay $208 per week, or $187 per week if pre-paid. She clarified that these numbers represented a fulltime week in daycare because "if you leave him there three (3) days it's a different rate but not much different." (Tr. p. 87). Ray's unverified worksheet reflects a child care expense of $139.37; however, no evidence exists establishing whether this number represents a cost for fulltime or part-time child care expense. Similarly, there is no testimony or evidence in the record that Ray used the day care because of "employment or job search." Child Supp. G. 3(E). Even if evidence would have been presented for the necessity of the child care expense, there is no support that a fulltime expense is warranted in light of Ray's part-time employment, assuming $139.37 represents fulltime child care costs. *See, e.g., Ashworth v. Ehrgott*, 934 N.E.2d 152, 164 (Ind. Ct. App. 2010). Accordingly, we reverse the trial court's calculation of the child care expenses with respect to the second worksheet and remand with instruction to clarify the calculation or to re-calculate Showalter's child support obligation. *See Dye*, 655 N.E.2d at 551.

## II. *Attorney Fees*

Next, Showalter contends that the trial court abused its discretion in ordering him to pay Ray's attorney fees. Indiana Code section 31-15-10-1(a) grants a trial court broad discretion to impose attorney fees on either party in actions for child support. Reversal is warranted only when the trial court's award is clearly

against the logic and effect of the facts and circumstances before the court. *Schacht v. Schacht*, 892 N.E.2d 1271, 1280 (Ind. Ct. App. 2008). In assessing attorney fees, the trial court may consider such factors as the resources of the parties, the relative earning ability, and the ability to engage in gainful employment. *Id.* However, the trial court need not give reasons for its determination. *Id.*

[26] Here, the trial court ordered Showalter to pay Ray's attorney fees in the amount of $1,963.[2] When asked to respond to the attorney fees request, Showalter addressed the court, stating "If it brings peace in this and I can have some time to do it I'd be glad to pay him nineteen sixty-three (1,963) with no argument and no question." (Tr. p. 87). Accordingly, as Showalter agreed to pay the requested attorney fees, he waived his argument for our review and cannot now be heard to complain.

## CONCLUSION

[27] Based on the foregoing, we conclude that the trial court erred in calculating Showalter's child support obligation and we reverse and remand with instructions regarding the calculation of the prior born child and the child care

---

[2] Showalter asserts that the attorney fees also include $4,440 for pre-appeal attorney fees. However, the pre-appeal attorney fees are not before this court as they were awarded by the trial court on August 25, 2016, *i.e.*, ten days after the notice of appeal was filed. Accordingly, the pre-appeal attorney fees are not before this court.

expenses. Additionally, we conclude that Showalter waived his attorney fees argument for our review.

[28] Affirmed in part, reversed in part, and remanded with instructions.

[29] Crone, J. and Altice, J. concur