## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 16 2017, 9:20 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
|---|---|
| Anthony J. Saunders | John L. Davis |
| New Castle, Indiana | Pritzke & Davis, LLP |
| | Greenfield, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

Eric Kennedy,

*Appellant-Respondent,*

v.

Michelle M. Wade,

*Appellee-Petitioner.*

March 16, 2017

Court of Appeals Case No.
33A04-1609-DR-2122

Appeal from the Henry Circuit Court

The Honorable Kit C. Dean Crane, Judge

Trial Court Cause No.
33C02-1108-DR-107

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Respondent, Eric Kennedy (Father), appeals the trial court's modification of child support and entry of post-secondary educational expenses.

We affirm.

# ISSUES

Father raises one issue on appeal which we restate as the following two issues:

(1) Whether the trial court abused its discretion in calculating Father's weekly income for child support purposes; and

(2) Whether the trial court committed clear error by establishing post-secondary educational expenses for an out-of-state university.

# FACTS AND PROCEDURAL HISTORY

A decree of dissolution of marriage between Father and Appellee-Petitioner, Michelle Wade (Mother), was entered on May 11, 2012. During the marriage, four children were born. In the decree, Mother was granted physical custody of the children, with Father ordered to pay a weekly child support obligation in the amount of $320. Father owns and operates his own business and Mother is a sole practicing attorney who practices law out of her residence.

On July 29, 2015, Father filed his verified petition for modification of child support. On February 11, 2016, Mother filed a verified petition for rule to show cause and a petition to modify child support and request to order contribution towards the oldest child's, K.K., post-secondary educational expenses. On May

9, 2016, Mother also filed a verified petition for sanctions with respect to Father's failure to comply with Mother's ongoing discovery requests.

[6] On May 20, 2016, the trial court conducted a hearing on the parties' pending petitions. During the hearing, the trial court dismissed Father's verified petition to modify child support as part of the sanctions the trial court entered for Father's ongoing discovery violations. The trial court also limited the income information Father was allowed to introduce into evidence to Father's income for the fiscal years 2012, 2013, and 2014. The parties agreed to average Father's income during those years and for the trial court to use that average in calculating Father's gross weekly income for child support purposes.

[7] On June 3, 2016, the trial court issued its Order, providing, in pertinent part:

> 11. The parties are the parents of four (4) children, and the oldest child, [K.K.], is eighteen (18) years of age and has been accepted to Arizona State University, Purdue University, and Ball State University. The child has the aptitude for college and the parties have the means to assist with the expenses for post-high school education.
>
> 12. The child prefers Arizona State University and intends to major in education and to teach in Arizona. First year tuition is higher than the Indiana schools which have accepted her but the other costs are similar. After one year to establish residency, she would be considered an Arizona resident entitled to in-state tuition. The parents are capable of assisting for the first year at Arizona State with the tuition, room, board, books and fees, minus [K.K.'s] student loan of Five Thousand Five Hundred Dollars ($5,500.00), One Thousand Three Hundred Dollars ($1,300.00) from a 529 account and Two Thousand Dollars

($2,000.00) in earnings, being divided between the parties based upon their percentages of the total income as set forth in the Child Support Obligation Worksheet (CSOW) attached hereto as Exhibit A, which shall be a part of this Order. For future years, the parties shall use the post-high school education worksheet using the same percentages as set forth herein but with new cost figures and contribution figures for [K.K.], and shall be divided between the parents based upon the percentages set forth in Exhibit A.

13. A change in circumstances has occurred which requires a modification of the child support for the minor children. Said child support shall be retroactive to and shall begin on February 12, 2016 and shall continue to the last Friday before the oldest child commences college. [Father] shall pay support in the amount of Four Hundred Thirty-Nine Dollars ($439.00) per week during this time period per the CSOW attached hereto and made a part hereof as Exhibit A.

* * * *

15. The [c]ourt shall average the incomes of the parties for 2012, 2013, and 2014 to obtain appropriate numbers for child support income.

(Appellant's App. Vol II, pp. 20-21).

Father now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

### I. *Modification of Child Support*

[9] Father contends that the trial court abused its discretion when calculating his modified child support obligation. In reviewing a trial court's order on a request to modify child support, we will reverse for an abuse of discretion. *Holtzleiter v. Holtzleiter*, 944 N.E.2d 502, 505 (Ind. Ct. App. 2011). An abuse of discretion occurs only when the decision is clearly against the logic and effect of the facts and the circumstances before the court, including any reasonable inferences that may be drawn therefrom. *Id*. The court has previously observed that "the importance of first-person observation and preventing disruption to the family settings justifies deference to the trial court." *Id*.

[10] Here, the trial court entered findings *sua sponte*. *Sua sponte* findings control only as to the issues they cover and a general judgment will control as to the issues upon which there are no findings. *Walters v. Walters*, 901 N.E.2d 508, 510 (Ind. Ct. App. 2009) (citing *Gibbs v. Kashak*, 883 N.E.2d 825, 827-28 (Ind. Ct. App. 2008)). A general judgment entered with findings will be affirmed if it can be sustained on any legal theory supported by the evidence. *Id*. When a court has made special findings of fact, an appellate court reviews sufficiency of evidence using a two-step process. *Id*. First, it must determine whether the evidence supports the trial court's findings of fact; second, it must determine whether those findings of fact support the trial court's conclusions of law. *Id*. Findings will be set aside if they are clearly erroneous. *Id*. Findings are clearly erroneous only when the record contains no facts to support them either directly or by inferences. *Id*. A judgment is clearly erroneous if it applies the wrong legal standard to properly found facts. *Id*. In order to determine that a finding or

conclusion is clearly erroneous, an appellate court's review of the evidence must leave it with the firm conviction that a mistake has been made. *Id*.

[11]    While Father does not dispute Mother's request to modify the child support *per se*, he does challenge the trial court's calculation of his modified child support obligation. The Indiana Child Support Guidelines (Guidelines) aid in the determination of the amount of child support that should be awarded and provide a measure for calculating each parent's share of the child support. *In re Paternity of G.R.G.*, 829 N.E.2d 114, 118 (Ind. Ct. App. 2005). "There is a rebuttable presumption that the amount of the award resulting from the application of the Indiana Child Support Guidelines is the correct amount to be awarded." *Id*. (citing *Lea v. Lea*, 691 N.E.2d 1214, 1217 (Ind. 1998)).

[12]    To determine whether a child support order complies with the child support guidelines, we must first know the basis for the amount awarded. *Heiligenstein v. Matney*, 691 N.E.2d 1297, 1303 (Ind. Ct. App.1998). "Such revelation could be accomplished either by specific findings or by incorporating a proper worksheet." *Id.* Accordingly, since 1989, the Guidelines have required, in all cases in which the trial court is requested to order support, that both parties complete and sign, under penalty of perjury, a child support worksheet to be filed with the court verifying the parents' incomes. *See* Ind. Child Support Guideline 3(B)(1); *Payton v. Payton*, 847 N.E.2d 251, 253 (Ind. Ct. App. 2006). Here, only Mother entered a completed, but unsigned, child support worksheet into evidence during the hearing. While neither party submitted a verified child support worksheet, the trial court made its own calculations based on the

findings in its Order and prepared its own child support worksheet, attached to its Order. As "the Guidelines are not meant to be a trap for the unwary but are intended to lead the way to a fair result in a complicated area of law," we will review Father's contentions based on the calculations made by the trial court. *Holtzleiter*, 944 N.E.2d at 506.

[13] Father disputes that the trial court's calculation of his weekly gross income is supported by the tax returns that were introduced into evidence at the hearing. While not disagreeing with the trial court's method of averaging his 2012, 2013, and 2014 income, Father contends that the trial court should have used his adjusted gross income and not his gross income as the basis of its computations.

[14] When fashioning a child support order, the trial court's first task is to determine the weekly gross income of each parent. *In re G.R.G.*, 829 N.E.2d at 118. "Weekly gross income" is broadly defined to include not only actual income from employment but also potential income and imputed income from "in-kind" benefits. *Id*. Guideline 3(A) encompasses in the definition of "gross income" "income from salaries, wages, . . . , bonuses, overtime, partnership distributions, [and] dividends[.]" The definition of weekly gross income for purposes of self-employment for the operation of a business includes "gross receipts minus ordinary and necessary expenses." Child Supp. G. 3(A)(2).

[15] Here, the trial court used Father's gross income as reported on his tax returns of 2012, 2013, and 2014 as the basis of its calculations. Pursuant to his tax returns, Father's gross income in 2012 amounted to $152,000. This number

was reported as being the combined business income from wages, S corporation, and gains. Upon being asked to confirm this number as his total income for 2012, Father replied "If that's what's reported, that's what's reported." (Tr. p. 51). Father's reported business income for 2013 was $153,787. Based on Father's 2014 business tax return, Father's reported income was $119,731, which was calculated by adding the compensation paid to Father in the amount of $57,336 with the distributions made to Father of $62,395. Accordingly, the trial court determined Father's aggregate gross income for the three years to be $425,518, which averaged to $141,839 gross yearly income. Based on this average gross income, the trial court computed Father's weekly gross income for purposes of child support.

[16] Father argues that instead of his gross income, the trial court should have used his adjusted gross income, as reported on his taxes, and which would have amounted to a weekly income of $1,884. We have previously noted that the calculation of a parent's income for support purposes is more inclusive than for income tax purposes. *Clark v. Madden*, 725 N.E.2d 100, 107 (Ind. Ct. App. 2000). In particular, the trial court is vested with discretion regarding the validity of business expenses and deductions taken for tax purposes by a business owner. *Zakrowski v. Zakrowski*, 594 N.E.2d 821, 824 (Ind. Ct. App. 1992). It is clear that the trial court relied on the Guidelines' broad definition of gross income for self-employed parents to support its calculations. Moreover, Father did not submit any evidence reflecting ordinary and necessary expenses that the trial court should have considered in its computations. In essence,

Father's argument to calculate his child support obligation based on his preferred income attributions amounts to nothing more than a request to reweigh the evidence. Accordingly, we cannot conclude that the trial court abused its discretion in calculating Father's income.

## II. *Post-Secondary Educational Expenses*

[17] Next, Father contests the trial court's treatment of post-secondary educational expenses. While Father does not challenge K.K.'s aptitude for post-secondary education or the apportionment of costs thereof, Father takes umbrage with the award of out-of-state post-secondary educational expenses. When we review a challenge to an order apportioning college expenses, we apply a clearly erroneous standard. *Carson v. Carson*, 875 N.E.2d 484, 485-86 (Ind. Ct. App. 2007). Clear error occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances before it and we are left with a firm conviction that a mistake has been made. *Id.*

[18] Under Indiana law, there is no absolute legal duty on the part of parents to provide a college education for their children. *Hinesley-Petry v. Petry*, 894 N.E.2d 277, 280 (Ind. Ct. App. 2008), *trans. denied*. However, the statutory authorization for the divorce court to order either or both parents to pay sums toward their child's college education constitutes a reasonable manner in which to enforce the expectation that most families would encourage their qualified children to pursue a college education consistent with individual family values. *Id.* at 280-81. In determining whether to order either or both parents to pay

sums toward their child's college education, the court must consider whether and to what extent the parents, if still married, would have contributed to the child's college expenses. *Id.* at 281.

[19] The purpose of an educational support order is the welfare of the child and not the punishment of the noncustodial parent. *Id.* It must be fair, not confiscatory in amount and intended to provide a reasonable allowance for support, considering the property, income, and earning capacity of the noncustodial parent, and the station of life of the family. *Id.* It is within the discretion of the trial court to determine under all the circumstances what is just and equitable to the child and to the noncustodial parent. *Id.*

[20] Father does not claim he cannot afford to pay for K.K.'s post-educational expenses, merely that K.K.'s decision is not substantiated in that a degree from Arizona State University is "more valuable, that it is more sought after by employers, that it is more prestigious, or that it is, in any way superior to a Purdue or Ball State teaching degree." (Appellant's Reply Br. p. 7). However, we have long rejected a bright-line rule that would limit children to educational support commensurate with in-state, state-supported colleges. *Rohn v. Thuma*, 408 N.E.2d 578, 582-83 (Ind. Ct. App. 1980). Rather, we held that these cases are more properly determined on a case-by-case basis, with the trial court balancing the advantages of the more expensive college in relation to the needs and abilities of the child with the increased hardship on the parent. *Id.* at 583.

[21] The record reflects that although K.K. had received acceptance offers from Purdue University and Ball State University, she elected to attend Arizona State University and to pursue a career in Arizona after her college education. Mother testified that Mother had purchased a residence in Arizona, near K.K.'s maternal grandparents, who live approximately fifteen miles from the university's campus. Evidence establishes that first year tuition will be $25,458, which was about $15,000 more than tuition for an in-state student at Purdue University. After her first year at Arizona State University, K.K. would qualify for in-state student rates, which would make the tuition comparable to Purdue University. Accordingly, the post-educational expenses would decrease significantly after the first year. The trial court ordered K.K. to contribute to her educational expenses, and apportioned the remainder between the parents, based on their respective income.

[22] Based on the facts before us, we cannot say that the trial court committed a clear error by apportioning post-educational expenses for an out-of-state university.

## CONCLUSION

[23] Based on the foregoing, we conclude that the trial court did not abuse its discretion when calculating Father's child support obligation and the court did not commit clear error in apportioning post-secondary educational expenses at an out-of-state university.

[24] Affirmed.

Crone, J. and Altice, J. concur