**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jun 14 2012, 9:19 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**AMY SEMONES**
Wilson & Semones
Jeffersonville, Indiana

ATTORNEYS FOR APPELLEE:

**LISA M. BROOKES-HAYSE**
Indiana Department of Child Services
Jeffersonville, Indiana

**ROBERT J. HENKE**
DCS Central Administration
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN RE THE TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF: | ) | |
| | ) | |
| C.V., O.V., and J.V. (Minor Children), | ) | |
| | ) | |
| AND | ) | |
| | ) | |
| G.J. (Father), | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 10A01-1111-JT-516 |
| | ) | |
| THE INDIANA DEPARTMENT OF CHILD SERVICES, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE CLARK SUPERIOR COURT
The Honorable Vicki L. Carmichael, Judge
Cause No. 10D01-1005-JT-503; 10D01-1005-JT-504 & 10D01-1005-JT-505

**June 14, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

STATEMENT OF THE CASE

Appellant-Respondent, G.J. (Father), appeals the trial court's termination of his parental rights to C.V., O.V., and J.V. (collectively, the Children).

We affirm.

ISSUES

Father raises four issues on appeal, which we consolidate and restate as the following two issues:

(1) Whether the trial court denied Father due process by denying his motion to dismiss; and

(2) Whether the evidence was sufficient to support the termination of Father's parental rights.

FACTS AND PROCEDURAL HISTORY

Father and F.V. (Mother)[1] are the parents of three Children, born in 2004, 2007, and 2008, respectively. In 2007 and 2008, the Clark County Department of Child Services (DCS) informally provided services to Mother based on her neglect of the Children, drug abuse, and attempted suicide. On October 2, 2008, DCS obtained an

---

[1] Although the trial court also terminated Mother's parental rights to the Children, she is not a party to this appeal.

emergency custody order removing the Children from Mother based on reports of neglect, substance abuse, and the family's homelessness. The Children were placed in foster care.

Subsequently, DCS filed its petitions alleging the Children to be a child in need of services (CHINS). On October 14, 2008, the trial court held an initial hearing on the CHINS petition. Both Father and Mother appeared and agreed that all Children were CHINS. On November 12, 2008, the trial court conducted a dispositional hearing. The Children were placed in Father's care. On November 25, 2008, the trial court found the three Children to be CHINS and entered its Dispositional Decree. Father was ordered to attend substance abuse treatment and groups, participate in random drug screening, maintain contact with the DCS family case manager, as well as receive home-based care services.

On March 19, 2009, the Children were removed from Father's care because of his positive test for cocaine use, and placed in the care of Father's mother. On August 10, 2009, the Children were removed from her care and placed back in foster care. Although Father subsequently sought substance abuse treatment, he continued to test positive for cocaine use and also refused to submit to testing. On April 22, 2010, DCS submitted a progress report to the trial court. It maintained that although the permanency plan called for the family's reunion, termination of parental rights proceedings were initiated because the parents had not complied with services offered to them by DCS, the Children's need for permanency, and the length of time. DCS also recommended that the parents' home-

based case management services be discontinued. On May 7, 2010, DCS filed three petitions for involuntary termination of parental rights. Thereafter, Father was incarcerated in connection with probation violations in Clark County.

On July 14, 2011, the trial court held a hearing on the petitions. During cross-examination of the DCS family case manager, Father's counsel made an oral motion to dismiss pursuant to I.C. § 31-35-2-4.5, which the trial court denied. At the end of the hearing, the trial court directed the parties to file their proposed findings and conclusions. On October 12, 2011, the trial court issued its Orders[2] terminating Mother and Father's parental rights to the Children.

Father now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

I. *Standard of Review*

We review the termination of parental rights with great deference. *In re K.S.*, 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). We will not reweigh the evidence or judge the credibility of witnesses. *In re D.D.*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*. Instead, we consider only the evidence and reasonable inferences most favorable to the judgment. *Id.* In deference to the trial court's unique position to assess the evidence, we will set aside a judgment terminating parental rights only if it is clearly

---

[2] The trial court issued three separate Orders for each child. The findings referred to herein are the same in each Order. We therefore cite only to the Order pertaining to C.V. throughout this opinion.

erroneous. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *reh'g denied*, *trans. denied*, *cert. denied*, 534 U.S. 1161 (2002).

Here, the Orders terminating Father's parental rights contain specific findings of fact and conclusions thereon. Accordingly, we apply a two-tiered standard of review. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). We determine first whether the evidence supports the findings and second whether the findings support the judgment. *Id.* A finding is clearly erroneous when there are no facts or inferences drawn therefrom that support it. *In re D.D.*, 804 N.E.2d at 265. A judgment is clearly erroneous only if the findings do not support the trial court's conclusions or the conclusions do not support the judgment. *Bester*, 839 N.E.2d at 147. If the evidence and inferences support the trial court's decision, we must affirm. *In re L.S.*, 717 N.E.2d at 208.

## II. *Due Process*

During the cross-examination of the DCS family case manager, Father moved to dismiss the petitions, citing I.C. § 31-35-2-4.5 in support. On appeal, Father argues that the trial court should have granted his motion to dismiss "because DCS did not provide substantial and material services which were required in order for the Father to achieve reunification," and therefore the trial court violated his procedural due process rights by denying his motion to dismiss. (Appellant's Br. p. 12).

5

We find no due process violation here. [3] Father fails to make a cogent argument that his procedural due process rights were violated. Despite citing precedent for a procedural due process argument, Father does not develop that argument. *See Lang v. Starke Cnty. Office of Family & Children*, 861 N.E.2d 366, 377 (Ind. Ct. App. 2007), *trans. denied*. Instead, Father argues that substantive due process requires DCS to make reasonable efforts to unify the family, and the DCS fulfills this requirement by providing substantial and material services. Since such services were withdrawn from him, Father concludes that the trial court denied him substantive due process by failing to dismiss the petitions.

An argument based on a lack of services does not serve as a basis to directly attack a termination order as contrary to law. *See In re E.E.*, 736 N.E.2d 791, 796 (Ind. Ct. App. 2000). Father's argument is not whether he was provided with substantial and material services to achieve reunification, but simply that DCS improperly terminated his services. However, "the responsibility to make positive changes will stay where it must, on the parent. If the parent feels the services ordered by the court are inadequate to facilitate the changes required for reunification, then the onus is on the parent to request additional assistance." *Prince v. Allen Cnty. Dep't of Child Services*, 861 N.E.2d 1223, 1231 (Ind. Ct. App. 2007). Further, "a parent may not sit idly by without asserting a need or desire

---

[3] A party may not raise a constitutional claim for the first time on appeal. *See In re S.P.H.*, 806 N.E.2d 874, 877 (Ind. Ct. App. 2004). The record reveals Father did not make a due process argument in connection with his motion to dismiss. The alleged due process violation argument is therefore waived on appeal. *See id*. at 877-78. Waiver notwithstanding, we address Father's contentions on their merits.

6

for services and then successfully argue that he was denied services to assist him with his parenting." *In re B.D.J.*, 728 N.E.2d 195, 201 (Ind. Ct. App. 2000).

The DCS family case manager testified that parenting classes and other services were provided to Father and that those services were substantial and material for reunification. The record shows that DCS provided substance abuse treatment referrals, home-based care services, and supervised visitations following the CHINS adjudications. Father failed to take advantage of these services and missed appointments, failed drug screens and did not provide evidence of attendance at substance abuse groups, and disrupting counseling sessions, resulting in DCS's eventual recommendation that services be withdrawn. Although the services were stopped in May 2010, Father did not request that services be reinitiated. Consequently, Father cannot be heard to complain that his inability to take advantage of those services constitutes a deprivation of due process when such services were stopped because of his own lack of participation and compliance. Thus, the trial court did not deprive Father of due process by denying his motion to dismiss the petitions.

## II. *Sufficiency of Evidence Supporting Termination*

Father also contests the sufficiency of the evidence supporting the termination of his parental rights. While Father does not challenge the trial court's determinations under I.C. § 31-35-2-4(2)(A) (removal of the child) or (D) (satisfactory plan), he disputes the trial court's determinations under I.C. § 31-35-2-4(b)(2)(B) and (C), which requires proof by clear and convincing evidence:

7

(B) that one (1) of the following is true:

> (i) There is a reasonable probability that the conditions that resulted in the [children's'] removal or the reasons for placement outside the home of the parents will not be remedied.

> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the [children].

(C) that termination is in the best interests of the [children]

I.C. § 31-35-2-4(b)(2)(B-C).

DCS must prove these allegations by clear and convincing evidence. I.C. § 31-37-14-2; *In re I.A.*, 934 N.E.2d 1127, 1133 (Ind. 2010). Clear and convincing evidence requires the existence of a fact to be "highly probable." *Hardy v. Hardy*, 910 N.E.2d 851, 859 (Ind. Ct. App. 2009). The trial court must terminate parental rights if it finds the allegations contained in the petition are true. I.C. § 31-35-2-8(a).

## A. *Remedy of Conditions*

When determining whether a reasonable probability exists that the conditions resulting in a child's removal will not be remedied, a trial court must judge a parent's fitness to care for his or her child at the time of the termination hearing, taking into consideration evidence of changed conditions. *In re J. T.*, 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), *trans. denied*. It must evaluate the parent's habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation. *Id.* The trial court may properly consider evidence of a parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate

8

housing and employment. *A.F. v. Marion Cnty. Office of Family & Children*, 762 N.E.2d 1244, 1251 (Ind. Ct. App. 2002), *trans. denied*. Evidence of the services offered to the parent by DCS and the parent's response to those services may also be considered. *Id.*

In concluding there was a reasonable probability the conditions resulting in the Children's removal from and continued placement outside of Father's care will not be remedied, the trial court found that:

24. [Father] has a lengthy history of drug abuse.
            * * *
27. [Father] has been in and out of rehabilitation services for his drug problem throughout his life.
28. [Father] was referred to LifeSpring Turning Point for a substance abuse assessment. [Father] was discharged because of non-compliance.
29. [Father] has attended inpatient treatment for substance abuse at various places including the Healing Place and the Veterans Administration Center multiple times.
30. [Father] has never successfully completed a treatment program for his substance abuse.
31. [Father] did not submit to random drug screens when requested by the [f]amily [c]ase [m]anager].
32. On April 18, 2011, [Father] avoided submitting to a drug screen when the [family case manager] requested.
33. On January 31, 2011, [Father] avoided submitting to a drug screen when the [family case manager] requested.
34. [Father] tested positive for cocaine on June 8, 2010.
            * * *
36. On the date of the hearing on the petition for termination of parental rights, [Father] was in custody on a petition to revoke probation in Clark County, Indiana.
37. On the date of the hearing on the petition for termination of parental rights, [Father] was in custody on a petition to revoke probation in Floyd County, Indiana. He has at least [four] years left on his suspended sentence that he may have to serve.
38. [Father] intends to participate in additional substance abuse treatment when he is released from jail.
39. [Father] will be unable to care for the [C]hildren even after his release from jail because he has not completed substance abuse treatment.

40. [Father] stated he needs to go to a structured environment once released from jail to be able to stay away from drugs.

41. [Father] testified that getting off of drugs is not going to happen overnight and that he needs more time.

42. [Father] did not maintain employment throughout the CHINS proceeding.

43. [Father] attended Barber School on and off throughout the CHINS proceeding.

(Appellant's App. pp. 19-21).

The Children were removed from Father's care because of his drug use, which remained unaddressed throughout the proceedings. However, Father argues that the trial court did not accord sufficient weight to Father's testimony on his efforts to correct the conditions precipitating the Children's removal. Father also argues that DCS failed to demonstrate that the conditions resulting in the Children's removal would not be remedied after Father's release from incarceration.

In contrast, DCS presented evidence of Father's refusal to address his substance abuse issues. The DCS family case manager testified that Father's participation in substance abuse treatment was inconsistent. Following the Children's removal in 2009, Father continued to fail drug tests until June 2010. Also, as late as January and April 2011, he refused to submit to drug screens. Although Father testified that he in fact completed some substance abuse programs, he admitted to relapsing, refused or avoided random drug tests, and failed to provide attendance sheets from substance abuse support group meetings. Father admitted that he had been in and out of prison in matters relating to drugs for a long time, and was currently incarcerated on a probation violation, with an additional probation violation pending. Finally, Father admitted that he was not capable

10

of caring for the Children as at the date of the hearing, and that he required a structured environment to prevent further relapses following his release from incarceration.

Based on the foregoing, we cannot say that the trial court's finding was clearly erroneous. DCS sufficiently established by clear and convincing evidence that there was a reasonable probability that the circumstances that led to the Children's removal from Father's care would not be remedied. In sum, Father's argument is simply an invitation to reweigh evidence or judge the credibility of witnesses, which we may not do. *See In re L.V.N.*, 799 N.E.2d 63, 69-71 (Ind. Ct. App. 2003).[4]

## B. *Best Interests of the Child*

Next, Father challenges the trial court's conclusion that termination of his parental rights was in the Children's best interests. Father contends that the trial court's determination was unsupported by statute or case law and cites I.C. § 31-17-2-8 to argue that preservation of his relationship with the Children was in their best interests. However, I.C. § 31-17-2-8 lists factors for the trial court to consider in child custody proceedings, and Father makes no argument justifying its application to an involuntary termination of parental rights proceeding.

Instead, the trial court is required to look beyond the factors identified by DCS to the totality of the evidence when determining what is in the best interests of a child. *In re*

---

[4] Father also argues that DCS did not meet its burden to prove continuation of the parent-child relationship posed a threat to the Children. However, we need not address this argument because DCS is required to prove only one of the three elements in I.C. § 31-35-2-4(b)(2)(B), which it in fact did. *See In re J.T.*, 742 N.E.2d at 512.

11

*T.F.*, 743 N.E.2d 766, 776 (Ind. Ct. App. 2001), *trans. denied.* In support of its conclusion that termination of Father's parental rights was in the Children's best interests, the trial court found the following:

> 2. The [C]hildren have resided together in the same foster home since August 10, 2009.
> 3. The [C]hildren have a strong bond with each other and with their foster parents.
>      * * *
> 6. The [C]hildren have stability while in the home of the foster parents.
> 7. [Father and Mother] have not had stable housing throughout the CHINS proceeding.
> 8. [Father and Mother] have not completed services throughout the CHINS proceeding.
> 9. [Father and Mother] continue to battle severe substance abuse problems.
> 10. [Father and Mother] have not had stable employment throughout the CHINS proceeding.
> 11. The DCS [family case manager] testified that it would be in the [Children's] best interest for parental rights to be terminated.
> 12. That it is not foreseeable that the [Children's] welfare will best be served by continuation of the parent-child relationship.

(Appellant's App. pp. 23-24).

Here, the record contains sufficient evidence that termination of Father's parental rights is in the best interests of the Children. Although Father cites his strong bond and the positive visitations with the Children, the record also contains examples of Father's inconsistencies by his missed or cancelled visitations, his lack of participation in home-based care management services, and election not to participate in child therapy sessions. By asserting error based upon the existence of evidence favorable to him, Father is merely inviting us to reweigh the evidence presented at the termination hearings, which we cannot do. *See In re D.D.*, 804 N.E.2d at 265.

12

Further, DCS presented substantial evidence demonstrating that termination of Father's parental rights was in the Children's best interests. The DCS family case manager testified that termination was in the Children's best interests because Father struggled with substance abuse, could not provide stability, and grappled with legal issues. The Children were removed from Father's care following his positive test for cocaine use. Contrary to Father's assertions, his substance abuse issues are unresolved as evidenced by his failed drug tests, refusals to submit to random drug testing, as well as his repetitive relapses and in and out-patient treatments. Further, although Father sought training as a barber, his employment objective remained an aspiration. Finally, Father was incarcerated for probation violation following the CHINS proceeding, with probation violation proceedings in another county pending. Although Father was due to be released following the termination hearing, Father admitted that there was a potential of four and a half years of incarceration for his pending probation violation. Father admitted that he was not capable of providing food, clothing, or shelter for the Children at the time of the termination of parental rights hearing. Accordingly, we conclude that DCS provided clear and convincing evidence demonstrating that termination of the parental relation is in the best interests of the Children.

## CONCLUSION

Based on the foregoing, we conclude that (1) the trial court's denial of Father's motion to dismiss did not deprive him of due process, and (2) there was sufficient evidence to support the involuntary termination of Father's parental rights.

13

Affirmed.

NAJAM, J. and DARDEN, J. concur