**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jul 17 2012, 9:10 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MARK SMALL**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**MICHELLE R. MARQUAND**
Jeffersonville, Indiana

**ROBERT J. HENKE**
DCS Central Administration
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN RE THE TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF: | ) ) ) | |
| Jo.L. (Minor Child), | ) ) | |
| AND | ) ) | |
| J.L. (Mother), | ) ) | |
| Appellant-Respondent, | ) ) | |
| vs. | ) ) | No. 22A01-1111-JT-542 |
| THE INDIANA DEPARTMENT OF CHILD SERVICES, | ) ) ) | |
| Appellee-Petitioner. | ) | |

**July 17, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

STATEMENT OF THE CASE

Appellant-Respondent, J. L. (Mother), appeals the trial court's termination of her parental rights to her minor child, Jo.L.[1]

We affirm.

ISSUES

Mother raises two issues on appeal, which we restate as:

(1) Whether the trial court's order contains sufficient findings to support its decision; and

(2) Whether the Indiana Department of Child Services (DCS) presented sufficient evidence to support the termination of Mother's parental rights to her minor child.

FACTS AND PROCEDURAL HISTORY

Mother is the mother of Jo.L., born on August 21, 2009. When Jo.L. was two days old, Mother, who was intoxicated at the time, dropped the child on the child's head.

---

[1] The trial court also terminated Father's parental rights, but he did not file an appellate brief contesting the trial court's conclusion.

The DCS became involved and at some point the DCS filed a petition to have Jo.L. declared to be a Child In Need Of Services (CHINS).[2] On September 10, 2009, the trial court adjudged Jo.L. to be a CHINS.

On January 19, 2011, the DCS filed its petition to terminate the parent-child relationship between Mother and Jo.L. On November 4, 2011, the trial court conducted a fact-finding hearing on the DCS's petition for termination. During the hearing, Mother explained that she has given birth to eight children, none of whom are in her care. She admitted that at least two of her children were born with fetal alcohol syndrome. Mother acknowledged to have had an alcohol abuse problem for the previous twenty years. Although she has participated in several different treatment programs, none of these have been successful as she relapsed every time.

During the course of the underlying CHINS proceedings, Mother completed some of the court-ordered services: she completed an education course through Our Place, she submitted to drug and alcohol screens, and she completed a psychological evaluation. DCS also made referrals for Mother to domestic violence services, drug and alcohol treatment, counseling, and therapy, as well as facilitation visits with Jo.L. Mother never successfully completed any of the referred DCS services. Additionally, Mother failed to (1) notify DCS of her changes in residence, (2) complete an intensive drug treatment program or enter a detoxification program when she was released from jail in February

---

[2] Appellant's Appendix falls woefully short of the requirements of Indiana Appellate Rule 50, as it contains only the chronological case summary of the termination proceedings and the trial court's Order. Appellant failed to submit any documents pertaining to underlying CHINS proceeding.

2011 after being held in contempt by a trial court in Kentucky for appearing at a court-hearing while intoxicated, (3) obtain suitable housing, (4) cooperate with services for domestic violence, and (5) remain drug and alcohol free.

Although Mother acknowledged to being given opportunities to visit with Jo.L., she did not visit with her on a consistent basis and no visits took place between November 2010 and October 17, 2011. Chris Wass (Wass), the family case manager assigned to Jo.L.'s case from December 14, 2010 until June 30, 2011, testified that during his tenure, Mother did not make any progress towards reunification with her child. He explained that, at times, he did not always know where Mother resided and her phone number was not always in service. George Shaheen (Shaheen), the most recent family case manager, explained that although he attempted to arrange visits between Mother and Jo.L., only one visit took place, two weeks prior to the termination hearing. Shaheen expressed his concern about Mother's persistent alcohol overuse, her lack of stable housing, her involvement with domestic abuse, and her lack of consistent visitation. He testified that Jo.L. did great in her foster placement and that the foster parents had expressed a desire to adopt her.

At the close of the evidence, the trial court stated, in pertinent part, the following:

Normally, I would be asking counsel to prepare proposed findings of fact and conclusions of law for me to sift through, review my notes . . . I'm taking judicial notice of the proceedings in the CHINS case involving [Jo.L.]. But I . . . I don't think that that is particularly necessary here today. And, I have some observations to make about some things here. . . . [I]n my review of cases from the [c]ourt of [a]ppeals and the [s]upreme [c]ourt in these types of cases, they['re] reluctant to terminate parental rights where effort is made by the parents to . . . for reunification. And, I'm specifically

4

required to consider what efforts the parents have made. What has been done since a termination was filed. And in this case virtually, other than the visit, nothing has been done . . . no effort has really come forward from the two of you that would give me some leeway, since the termination was filed. I think the evidence is clear that [Jo.L.] has been removed from the parent for fifteen of the most recent twenty-two months prior to the filing of the termination petition, so that prerequisite has been met. I'm going to find that by clear and convincing evidence there is a reasonable probability that the conditions that resulted in [Jo.L.'s] removal . . . or reasons for placement outside the home, will not be remedied. And my basis for that is, number one, there has been minimal compliance with the [d]ispositional [d]ecree and with the [p]arental [p]articipation [o]rder, and specifically some services were completed . . . or worked on, but for whatever reason the parents were terminated by the provider. Now . . . I can look at this that DCS maybe should have been more proactive, and tried to find some other means of providing services so that reunification might be attempted. But, the parents have a burden to do that as well. They have the obligation if they want to have custody or get a child back, then they have to make proactive steps as well, and that's not been done. And frankly, yes, both of you have done some things, but not nearly what it takes for reunification to occur. And that's very clear from all the evidence that has been presented. Another aspect of this is that the two of you had not had stable housing, and that is a major concern, and despite having opportunities, you have not obtained stable housing. So that there would be some opportunity to establish a household and have [Jo.L.] placed back with you. This case is about [Jo.L.]. It's not about the other seven children, and while that information was presented it has no bearing on my decision to terminate your parental rights with Jo.L.

. . . So, I'm going to find a termination of the parent-child relationship is in [Jo.L.'s] best interest and that the [DCS] has a satisfactory plan for the care and treatment of [Jo.L.], that plan being adoption. And it's also telling, particularly as to [Father], it's telling when he says, I really didn't do much. I really haven't done anything. That's pretty much exactly what I have written down earlier[.] I never enjoy terminating parental rights, but this is what's best for [Jo.L.], so that's the decision of the [c]ourt.

(Transcript pp. 265-68).

On November 15, 2011, the trial court issued its Order, terminating Mother's parental rights, stating, in pertinent part:

5

The [c]ourt now finds that said child was removed from her parents [sic] care and under the supervision of the [DCS] for at least 15 months of the most recent 22 months.

The State of Indiana proved by clear and convincing evidence that there is a reasonable probability that the conditions that resulted in the child's removal or reasons for placement outside the home of the parents will not be remedied.

The [c]ourt further finds there has been minimal compliance with the [d]ispositional [o]rders and the [p]arent [p]articipation [o]rder. Specifically, some services were completed or worked on but the parents were terminated by the service providers. The parents still do not have stable housing.

Termination of [Mother] and [Father]'s parental rights to [Jo. L.] is in the child's best interest.

Further, the DCS has a satisfactory plan for the care and treatment of the child, adoption.

(Appellant's App. p. 12).

Mother now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Sufficiency of the Trial Court's Order*

First, Mother notes that because the trial court merely issued a general finding against her, rather than a myriad of detailed findings and conclusions, we will traditionally affirm a general finding if it is sustainable upon any legal theory. However, in light of the fundamental importance of the rights that are at stake, Mother maintains that the standard of review should be greater and requests us to apply the standard of review for special findings pursuant to Ind. Trial Rule 52. DCS interprets Mother's argument as contesting the validity of the trial court's order for lacking sufficient findings.

6

We agree with the parties that there is no requirement that a trial court issue special findings in a case involving termination of parental rights. Indiana Code section 31-35-2-8 simply provides, in pertinent part, that "if the court finds that the allegations in a petition . . . are true, the court shall terminate the parent-child relationship." As such, a trial court is not statutorily required to enter findings when involuntarily terminating a parent-child relationship. *Parks v. Delaware Co. Dept. of Child Services*, 862 N.E.2d 1275, 1278 (Ind. Ct. App. 2007). But where, as here, the rights involved are of constitutional magnitude, our review cannot begin and end with the mere fact that applicable statutes do not require a trial court to support its conclusions with any identifiable rationale. *In re A.K.*, 924 N.E.2d 212, 220 (Ind. Ct. App. 2010). We have held that:

> We believe that a judgment terminating the relationship between a parent and child is impossible to review on appeal if it is nothing more than a mere recitation of the conclusions the governing statute requires the trial court to reach. Indiana's parents and children deserve more, and the basic notions of due process inherent in our system of justice demand more.
>
> Trial courts are required by statute to enter findings of fact and conclusions of law in CHINS proceedings. Likewise, findings of fact and conclusions of law are required in grandparent visitation proceedings. Proceedings to terminate parental rights touch interests at least as fundamental as those regarding CHINS and grandparent visitation. We hold today that our courts must treat them accordingly, with the constitutional gravity they clearly have, and enter findings of fact that support the entry of the conclusions called for by the Indiana statute and common law.

*Id*. In *A.K.*, the trial court's order merely recited the statutory requirements for termination and did not include any findings of fact to support those conclusions. *Id*. at

7

217. We remanded to the trial court for the entry of factual findings to support its order. *Id*.

Here, however, even though the trial court's order is *de minimus* in its findings, the trial court did include its overarching concerns leading to its decision to terminate Mother's parental rights. Combining the trial court's order with the very lengthy and detailed findings made by the trial court at the close of the hearing on the DCS's termination petition, we have enough information to review whether the trial court based its judgment on proper considerations. Consequently, we will address Mother's argument in light of the T.R. 52 standard of review rather than remand for the entry of a new order. *See also In re M.W.*, 942 N.E.2d 154, 159-160 (Ind. Ct. App. 2011) (the omission of the conclusion that termination was in the child's best interest does not warrant remand to the trial court for the entry of a new order).

## II. *Sufficiency of the Evidence*

On appeal, Mother argues that the State did not produce sufficient evidence to support the termination of her parental rights to her minor child. We recognize that the Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. *In re J.S.O.,* 938 N.E.2d 271, 274 (Ind. Ct. App. 2010). A parent's interest in the care, custody, and control of his or her children is arguably one of the oldest of our fundamental liberty interests. *Id.* However, the trial court must subordinate the interests of the parents to those of the children when evaluating the circumstances surrounding a termination of a parent-child relationship. *In*

8

*re J.H.,* 911 N.E.2d 69, 73 (Ind. Ct. App. 2009), *trans. denied.* Parental rights may therefore be terminated when the parents are unable or unwilling to meet their parental responsibilities. *Id.*

In reviewing termination proceedings on appeal, this court must not reweigh the evidence nor assess the credibility of the witnesses. *Id.* We consider only the evidence that supports the trial court's decision and the reasonable inferences drawn therefrom. *Id.* Where the trial court has entered findings of fact and conclusions of law, we apply a two-tiered standard of review. *Id.* First, we determine whether the evidence supports the findings, and second, whether the findings support the conclusions of law. *Id.* In deference to the trial court's position to assess the evidence, we set aside the trial court's findings and judgment terminating the parent-child relationship only if they are clearly erroneous. *Id.*

In the instant case, Mother challenges the trial court's conclusion of law terminating her parental rights because she argues that there was not sufficient evidence to prove that the conditions that led to the removal of her child from the home would not be remedied. In order to terminate her rights, DCS was required to prove by clear and convincing evidence:

> (B) that one of the following [was] true:
>> (i) There [was] a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents [would] not be remedied.
>> (ii) There [was] a reasonable probability that the continuation of the parent-child relationship[s] [posed] a threat to the well-being of the child.

9

> (iii)　The child [had], on two (2) separate occasions, been adjudicated [] in need of services[.]
>
> (C) that termination [was] in the best interests of the child.

Ind. Code § 31-35-2-4(b)(2)(B), -(C); *Bester v. Lake Cnty. Office of Family and Children,*839 N.E.2d 143, 148 (Ind. 2005).　Clear and convincing evidence as a standard of proof requires the existence of a fact to "be highly probable." *Hardy v. Hardy,* 910 N.E.2d 851, 859 (Ind. Ct. App. 2009).　It need not reveal that "the continued custody of the parents is wholly inadequate for the child's very survival." *Bester,* 839 N.E.2d at 148 (quoting *Egly v. Blackford Cnty. Dep't of Pub. Welfare,* 592 N.E.2d 1232, 1233 (Ind. 1992)).　Rather, it is sufficient to show that the child's emotional and physical development are threatened by the parent's custody. *Id.*

With respect to these criteria, Mother contends that "given [Mother's] efforts to abstain from consumption of alcohol, and her sobriety at time of the [f]act-[f]inding hearing," DCS did not present sufficient evidence indicating that the conditions that led to the removal of Jo.L. had not been remedied.　(Appellant's Br. p. 11).

When determining whether there is a reasonable probability that a parent will not remedy the conditions justifying a child's removal from the home, the trial court must judge a parent's fitness to care for his or her child at the time of the termination hearing. *Rowlett v. Vanderburgh Cnty. Office of Family and Children,* 841 N.E.2d 615, 621 (Ind. Ct. App. 2006).　The trial court must evaluate the parent's habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation of the child. *C.T. v. Marion Cnty. Dept. of Child Services,* 896 N.E.2d 571, 578 (Ind. Ct. App.

10

2008), *trans. denied.* DCS is not required to rule out all possibilities of change; rather, it need only establish "that there is a reasonable probability that the parent's behavior will not change." *Id.* (quoting *In re Kay L.,* 867 N.E.2d 236, 242 (Ind. Ct. App. 2007)). Moreover, the trial court may properly consider a parent's criminal history, drug and alcohol abuse, historical failure to provide support, and lack of adequate housing and employment. *Matter of D.G.,* 702 N.E.2d 777, 779 (Ind. Ct. App. 1998).

Here, the trial court focused on Mother's almost non-existent compliance with the dispositional decree and parental participation order, her continued alcoholism, and her lack of visitation with Jo.L., with the exception of a single visit which took place two weeks prior to the termination hearing. Mother failed to keep the family case managers informed of her location and the evidence reflects that she continued to be involved in domestic abuse situations. Although the trial court acknowledged Mother's attempts to comply with the required services during the underlying CHINS proceeding, it is clear that her attempted compliance was not enough and fell significantly short of persuading the trial court that she had made a good faith effort to pursue reunification with Jo.L.

In response to Mother's argument that "she had not been given a chance [by the DCS] to have time with Jo.L.," we note the testimony of both family case managers who stated that even though they attempted to arrange visits between Mother and Jo.L., Mother could not be located. (Appellant's Br. pp. 10-11). Moreover, we have previously established that a failure to provide services does not serve as a basis on which to directly

11

attack a termination order as contrary to law. *In re E.E.,* 736 N.E.2d 791, 796 (Ind. Ct. App. 2000).

In sum, we determine that the trial court's findings are sufficient to support the trial court's conclusion that the conditions leading to the removal of Jo.L. from Mother's home would not be remedied. Therefore, we affirm the trial court's termination of her parental rights.

CONCLUSION

Based on the foregoing, we conclude that the trial court's findings were sufficient to support its decision and the DCS provided sufficient evidence to support the termination of Mother's parental rights to her minor child.

Affirmed.

NAJAM, J. and DARDEN, J. concur