**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

Jan 20 2012, 8:33 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**LORINDA MEIER YOUNGCOURT**
Bedford, Indiana 47421

ATTORNEYS FOR APPELLEE:

**ROBERT J. HENKE**
DCS Central Administration
Indianapolis, Indiana

**ELLEN N. MARTIN**
Indiana Department of Child Services
Bloomfield, Indiana

**DARLENE STEELE McSOLEY**
Bedford, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

IN RE THE TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF:  )
  )
  )
R.C. & S.C. (Minor Children)  )
  )
  And  )
  )
R.C. (Mother),  )
  )
  Appellant-Respondent,  )
  )
   vs.  )  No. 47A05-1104-JT-232
  )
THE INDIANA DEPARTMENT OF CHILD  )
SERVICES,  )
  )
  Appellee-Petitioner.  )

**January 20, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

STATEMENT OF THE CASE

Appellant-Respondent, R.C. (Mother), appeals the trial court's termination of her parental rights to her minor children, R.C. and S.C.[1]

We affirm.

ISSUE

Mother raises one issue on appeal, which we restate as:  Whether the State presented sufficient evidence to support the termination of her parental rights to her minor children, R.C. and S.C.

FACTS AND PROCEDURAL HISTORY

Mother and W.G. (Father) are the parents of R.C., born June 14, 2005, and S.C., born March 3, 2008.  On August 18, 2009, Lawrence County police officers visited Mother and Father's residence, which was a trailer lacking ventilation.  They found R.C. and S.C. inside the trailer, along with an active methamphetamine lab and precursors to

---

[1] The trial court also terminated Father's parental rights, but he is not a party to this appeal.

make methamphetamine. The police department contacted Pam Kiser (Kiser) of the Department of Child Services (DCS), and Kiser met the police officers at the trailer. While there, Kiser was warned not to go in the trailer as "[the chemicals] had burned the eyes and lungs of people who had gone in previous[ly]." (Transcript vol. II, p. 110). Kiser noted that there was "a strong burning sensation that [she] could smell." (Tr. vol. II, p. 111). The police officers arrested Father at the scene because of outstanding warrants. Father pled guilty to the resulting charges and was sentenced to twelve years in the Department of Correction, with three years suspended. DCS took the children to the hospital for decontamination and medical care and then subsequently placed them in foster care as the trailer was not habitable.

On August 19, 2009, DCS filed petitions on behalf of R.C. and S.C., alleging that they were children in need of services (CHINS). Mother admitted to the allegations in the CHINS petitions, and on September 2, 2009, the trial court adjudicated the children to be CHINS. On October 6, 2009, the trial court held a dispositional hearing and ordered Mother to, among other things: (1) participate and cooperate in individual and family therapy; (2) cooperate and participate in substance abuse assessment and follow all recommendations; (3) cooperate and participate in random drug screens; and (4) fully cooperate with DCS.

DCS referred Mother to Larna Anderson (Anderson), a therapist at the Villages of Indiana, to work on issues such as parenting, substance abuse, relationships, finances, and making better choices. Mother and Anderson had weekly sessions until Mother moved to

Vincennes, Indiana in 2010. During their sessions, Anderson discovered that Mother had various relationship partners who were not "suitable" to be around her children. (Tr. vol. I, p. 66). According to Anderson, "most of them had a history of drug use, substance abuse, [and] some drug dealing;" at least three stood out as having violent tendencies. (Tr. vol. I, p. 66). Two or three of these partners lived with Mother at some point. Anderson also discovered people who appeared to be living in Mother's home, such as a man whose name Mother did not know but whom she said "just needed a place to sleep." (Tr. vol. I, p. 74). Another occupant was a registered sex offender.

During their sessions, Anderson noticed that Mother used money inappropriately and would support her friends with her food and food stamps until she did not have enough money to meet her own needs. As a result, Mother struggled to pay rent and utilities and had her utilities shut off at different times. Anderson worked with Mother to create a budget, but Mother did not live within that budget. Mother also worried about getting a job because she did not want to lose any of her social security income. Mother only worked for a few days as a bell ringer throughout the CHINS proceedings.

In July of 2010, DCS asked Mother to take a drug test. She responded, saying: "[f]uck it to everything. Screw getting my kids back. I'm done." (Tr. vol. II, p. 68). Later that night, Mother attempted suicide and was admitted to Bloomington Hospital's stress unit. While there, she tested positive for methamphetamines and was diagnosed as polysubstance dependent. Other incidences also made it clear that Mother was continuing her criminal behavior and drug use. In May of 2010, Mother pled guilty to

4

check deception, and in July of 2010, Mother pled guilty to three Counts of purchasing more than three grams of a precursor in a week. Prior to the factfinding hearing in this cause, Mother was again arrested on charges of purchasing too many precursors.

In August 2010, Mother moved to Vincennes, Indiana to be close to her mother. At first, DCS considered conducting visits in Vincennes but decided against it because Mother had received threats from people she knew. At one point, someone had knocked the windows out of Mother's trailer, and at another point someone had threatened to set fire to the trailer. Consequently, Mother was responsible for obtaining transportation to attend visitations back in Lawrence County, but she could not do so. As a result, Mother missed 18 of 22 visits between August 2010 and January 2011. However, she used her mother's car to make trips to various cities during the same time period.

On August 10, 2010, DCS filed petitions for the involuntary termination of Mother's rights to R.C. and S.C. On September 7, 2011, the trial court conducted an initial hearing on the petitions and appointed a court appointed special advocate for R.C. and S.C. On January 4 and 5, 2011, the trial court conducted an evidentiary hearing on the termination petitions and took the matter under advisement at the conclusion of the hearing. On March 28, 2011, the trial court entered an Order terminating Mother's parental rights.

Mother now appeals. Additional facts will be provided as necessary.

<u>DISCUSSION AND DECISION</u>

On appeal, Mother argues that the State did not produce sufficient evidence to support the termination of her parental rights to her minor children R.C. and S.C. We recognize that the Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. *In re J.S.O.,* 938 N.E.2d 271, 274 (Ind. Ct. App. 2010). A parent's interest in the care, custody, and control of his or her children is arguably one of the oldest of our fundamental liberty interests. *Id.* However, the trial court must subordinate the interests of the parents to those of the children when evaluating the circumstances surrounding a termination of a parent-child relationship. *In re J.H.,* 911 N.E.2d 69, 73 (Ind. Ct. App. 2009), *trans. denied.* Parental rights may therefore be terminated when the parents are unable or unwilling to meet their parental responsibilities. *Id.*

In reviewing termination proceedings on appeal, this court must not reweigh the evidence nor assess the credibility of the witnesses. *Id.* We consider only the evidence that supports the trial court's decision and the reasonable inferences drawn therefrom. *Id.* Where, as here, the trial court has entered findings of fact and conclusions of law, we apply a two-tiered standard of review. *Id.* First, we determine whether the evidence supports the findings, and second, whether the findings support the conclusions of law. *Id.* In deference to the trial court's position to assess the evidence, we set aside the trial court's findings and judgment terminating the parent-child relationship only if they are clearly erroneous. *Id.*

In the instant case, Mother challenges the trial court's conclusions of law terminating her parental rights because she argues that there was not sufficient evidence to prove that the conditions that led to the removal of her children from the home would not be remedied. In order to terminate her rights, DCS was required to prove by clear and convincing evidence:

> (B) that one of the following [was] true:
>> (i) There [was] a reasonable probability that the conditions that resulted in the child[ren]'s removal or the reasons for placement outside the home of the parents [would] not be remedied.
>> (ii) There [was] a reasonable probability that the continuation of the parent-child relationship[s] [posed] a threat to the well-being of the child[ren].
>> (iii) The child[ren] [had], on two (2) separate occasions, been adjudicated [] in need of services[.]
> (C) that termination [was] in the best interests of the child[ren].

Ind. Code § 31-35-2-4(b)(2)(B), -(C); *Bester v. Lake Cnty. Office of Family and Children,* 839 N.E.2d 143, 148 (Ind. 2005). Clear and convincing evidence as a standard of proof requires the existence of a fact to "be highly probable." *Hardy v. Hardy,* 910 N.E.2d 851, 859 (Ind. Ct. App. 2009). It need not reveal that "the continued custody of the parents is wholly inadequate for the child's very survival." *Bester,* 839 N.E.2d at 148 (quoting *Egly v. Blackford Cnty. Dep't of Pub. Welfare,* 592 N.E.2d 1232, 1233 (Ind. 1992)). Rather, it is sufficient to show that the child's emotional and physical development are threatened by the parent's custody. *Id.*

With respect to these criteria, Mother contends that evidence indicated that she made improvements in her ability to care for her children and that she would have been

able to remedy the conditions that led to their removal from her home. She notes in particular that: (1) she obtained a residence in Vincennes that she could afford on her fixed income; (2) she put money towards a vehicle so that she would be able to transport herself to Lawrence County to make visits; (3) she attempted to secure visits in Vincennes with her children; and (4) she was seeking help with her substance abuse problems and only tested positive for methamphetamine on one occasion.

In essence, Mother requests that we reweigh the evidence considered by the trial court, which we may not do. *See In re J.H.,* 911 N.E.2d at 73. Instead, we find that there was sufficient evidence that the conditions that led to R.C. and S.C.'s removal from Mother's home would not be remedied. When determining whether there is a reasonable probability that a parent will not remedy the conditions justifying a child's removal from the home, the trial court must judge a parent's fitness to care for his or her child at the time of the termination hearing. *Rowlett v. Vanderburgh Cnty. Office of Family and Children,* 841 N.E.2d 615, 621 (Ind. Ct. App. 2006). The trial court must evaluate the parent's habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation of the child. *C.T. v. Marion Cnty. Dept. of Child Services,* 896 N.E.2d 571, 578 (Ind. Ct. App. 2008), *trans. denied.* DCS is not required to rule out all possibilities of change; rather, it need only establish "that there is a reasonable probability that the parent's behavior will not change." *Id.* (quoting *In re Kay L.,* 867 N.E.2d 236, 242 (Ind. Ct. App. 2007)). Moreover, the trial court may properly consider a parent's criminal history, drug and alcohol abuse, historical failure to

provide support, and lack of adequate housing and employment. *Matter of D.G.,* 702

N.E.2d 777, 779 (Ind. Ct. App. 1998).

Here, the trial court found that:

9. Following the removal of [R.C.] and [S.C.] in August of 2009, Mother has continued to be involved in illegal activities:
> (a) In May of 2010, Mother pleaded guilty to the offense of check deception.
> (b) In July of 2010, Mother pleaded guilty to three [C]ounts of buying more than 3 grams of ephedrine/pseudophedrine in three different one-week periods.
> (c) Immediately following the fact-finding hearing in this cause, Mother was placed under arrest pursuant to another warrant for buying excessive amounts of ephedrine/pseudoephedrine and other precursors.

\*      \*      \*

12. . . . [Anderson] testified that Mother continued to choose partners with violent behavior who would be unsafe for the children to be around. Anderson testified that, although the goals were made clear to Mother, the therapist has not seen any change in her and does not believe she is capable of giving the children the supervision and care they need.

13. Evelyn Brock, the visitation supervisor, testified that Mother was distracted during visits, did [not] follow up on recommendations and continued to choose friends who would be a danger to the children.

\*      \*      \*

16. Between August of 2010 and the date of the termination hearing, twenty-two (220 visits were scheduled for Mother to visit her children. Of those, Mother canceled eighteen (18) visits and completed (4). Mother testified that she didn't have transportation but admitted that she used her mother's car for trips to various other cities during that time period.

17. Amanda Thatcher [(Thatcher)] testified that she took over as Family Case Manager in November 2010 after Pam Kiser was promoted to Director of the DCS Program in Martin County. Thatcher testified that . . . Mother has made no significant progress.

9

\* \* \*

22. Mother admitted that she had tested positive for methamphetamine in July of 2010 . . . .

(Appellant's App. pp. 48-51). We determine that these findings are sufficient to support the trial court's conclusion that the conditions leading to the removal of R.C. and S.C. from Mother's home would not be remedied. As Mother does not dispute these findings, we also conclude that they are sufficient to support the trial court's termination of Mother's parental rights.[2]

## CONCLUSION

Based on the foregoing, we conclude that the DCS provided sufficient evidence to support the termination of Mother's parental rights to her minor children, R.C. and S.C.

Affirmed.

FRIEDLANDER, J. and MATHIAS, J. concur

---

[2] Because we find that there was sufficient evidence to prove that the conditions that led to R.C. and S.C.'s removal would not be remedied, we will not address the issue of whether Mother was a threat to R.C. and S.C.'s well-being.