**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

Aug 27 2013, 5:32 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**KRISTINA J. JACOBUCCI**
Newby Lewis Kaminski & Jones, LLP
LaPorte, Indiana

ATTORNEYS FOR APPELLEE:

**MICHAEL C. BROWN**
Michigan City, Indiana

**ROBERT J. HENKE**
DCS Central Administration
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

IN THE MATTER OF THE TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF: )
)
)
A.S. (Minor Child), )
)
And )
)
B.R. (Mother), )
)
    Appellant-Respondent, )
)
        vs. )    No. 46A04-1302-JT-58
)
THE INDIANA DEPARTMENT OF CHILD SERVICES, )
)
)
    Appellee-Petitioner. )

APPEAL FROM THE LAPORTE CIRCUIT COURT
The Honorable Thomas J. Alevizos, Judge
Cause No. 46C01-1206-JT-59

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

STATEMENT OF THE CASE

Appellant-Respondent, B.R. (Mother), appeals the trial court's termination of her parental rights to her minor child, A.S.[1]

We affirm.

ISSUES

Mother raises two issues on appeal, which we restate as:

(1) Whether the trial court violated Mother's procedural due process rights when it denied her request for a continuance; and

(2) Whether the Indiana Department of Child Services (DCS) presented clear and convincing evidence to support the termination of Mother's parental rights to her minor child.

FACTS AND PROCEDURAL HISTORY

Mother is the mother of A.S., born on October 6, 2009. On February 12, 2011, the Michigan City Police Department received a report of a child that had been left alone in an apartment. When officers arrived at the apartment, there was no response at the home. Because they could hear a child crying, they entered the apartment through a window.

---

[1] The trial court also terminated Father's parental rights, but he did not file an appellate brief and is not part of this appeal. We will provide facts as to Father only as necessary to address Mother's arguments.

The officers found A.S. alone in the apartment, wearing a diaper that was too small for him. He was dirty and had a foul smell. The apartment was unclean, with moldy food, feces, and dirty clothing on the floor. Because Mother failed to arrive home during the one and a half hours the officers remained in the apartment, the officers notified DCS, who removed A.S. from the home. Mother did not contact DCS or respond to the note left by DCS at the home when A.S. was taken into custody. The following day, DCS returned to the apartment and met with Mother. Mother did not inquire after her child or asked where he was. She admitted to having left the child home alone to get some milk. When she returned, she noticed police were present at her residence so she just kept driving.

On June 6, 2011, the trial court adjudicated A.S. to be a Child in Need of Services (CHINS). At the dispositional hearing on June 29, 2011, where Mother failed to appear in person but was represented by counsel, the trial court ordered Mother to participate in a drug treatment program, parenting classes and case management services, submit to random drug screens, maintain stable housing and employment, keep DCS informed of her criminal status and address, and participate in supervised visitation. On August 27, 2012, the DCS filed a petition to terminate Mother's parental rights to her minor child. On January 8, 2013, the trial court conducted a hearing on DCS's petition. At the beginning of the hearing, Mother orally requested a continuance to demonstrate her willingness to participate in services and her ability to assume parental responsibilities. The trial court denied her request. On January 9, 2013, the day following the evidentiary

3

hearing, the trial court entered its Order, terminating Mother's parental rights, finding in pertinent part:

19. There is a reasonable probability that the conditions that resulted in the Child's removal or the reasons for placement outside the home of Mother will not be remedied in that:

a. Mother has not completed any of the services ordered by the court.

i. Mother was incarcerated in the LaPorte County Jail on July 1, 2011, two days after disposition, but was released on July 6, 2011.

ii. Mother was again incarcerated on July 20, 2011. Between disposition on June 29, 2011, and July 1, 2011, Mother did not participate in any of the services offered or provided; between July 6 and July 20, 2011, Mother did not participate in any services. She did not contact the [DCS] to inquire about those services or her child.

iii. Mother was released from the LaPorte County Jail on April 2, 2012 and did not seek any services during that date and when she was once again incarcerated on May 29, 2012. During the time she was in the community she did not participate in or initiate any services nor did she contact [DCS] and seek assistance with transportation.

b. Mother remained incarcerated from May 29, 2012 until she bonded out of the LaPorte County Jail on December 21, 2012. In those few days between her release and the fact-finding hearing Mother contends that she has attended one AA/NA [meeting] on December 24, 2012 and completed one online [Moral Recognition Therapy] session at the library on December 23, 2012.

c. Mother has a history of unstable housing:

* * *

4

iv.  Mother is currently residing with three other individuals at 1303 Wright Avenue; one of the individuals with whom Mother lives has a history of substantiated child neglect.

v.  The [trial court] may not approve of other placement of a child in a home if a person who is currently residing in the home has committed an act resulting in a substantiated report of child abuse or neglect.  [I.C. §] 31-34-20-1.5.

vi.  Mother admits that this same individual with whom she is living has a history of heroin use, but contends that she has been clean for a year.

vii.  Mother relies on others in the home to provide her housing, utilities and transportation.

viii.  Mother's residence remains unstable and inappropriate for a child.

d.  Moreover, Mother has a history of criminal conduct.

i.  Mother's criminal conduct has resulted in her frequent and extended incarceration, depriving Child of her ability to care for him.

ii.  The trial court must evaluate the parent's habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation of the child.

iii.  DCS is not required to rule out all possibilities of change; rather, it need only establish "that there is a reasonable probability that the parent's behavior will not change."

iv.  Mother's repeated pattern of criminal behavior, which includes *inter alia* auto theft, theft, and neglect of a dependent, resulting in incarceration that has caused her to be absent for a significant amount of Child's life.

v.  Mother's pattern of criminal activity which causes her to be incapable of caring for Child and demonstrates that there is a reasonable probability that the condition would not be remedied.

5

\* \* \*

21.  Termination of parental rights is in the best interest of the child in that:

a.  The evidence supports the conclusion that conditions in the home will not change and that continuation of the parent-child relationship poses a threat to the well-being of the child.

b.  He has been in the same foster home for nearly two years.

c.  He has developed, is healthy and thriving in his current home.

d.  He bonded to the entire family.

e.  Child deserves permanency; an opportunity to be adopted by his foster parents,

22.  The [DCS] has a satisfactory plan for the care and treatment of the child, which is adoption by the current foster parents.

(Appellant's App. pp. 19-22 & 24-25).

Mother now appeals.  Additional facts will be provided as necessary.

DISCUSSION AND DECISION

I. *Continuance*

Mother first contends that her due process rights were violated when the trial court denied her motion for continuance of the evidentiary hearing on the DCS's petition to terminate her parental rights.  The decision to grant or deny a motion for a continuance rests within the sound discretion of the trial court.  *Rowlett v. Vanderburgh Co. Office of Family and Children*, 841 N.E.2d 615, 619 (Ind. Ct. App. 2006).  We will reverse the trial court only for an abuse of that discretion.  *Id.*  An abuse of discretion may be found in the denial of a motion for a continuance when the moving party has shown good cause

6

for granting the motion. *Id.* However, no abuse of discretion will be found when the moving party has not demonstrated that he or she was prejudiced by the denial. *Id.*

Regarding the process due to a parent in termination proceedings, we have previously explained that:

> [t]he Due Process Clause of the United States Constitution prohibits state action that deprives a person of life, liberty, or property without a fair proceedings. When the State seeks to terminate the parent-child relationship, it must do so in a manner that meets the requirements of due process. The nature of the process due in a termination of parental rights proceeding turns on the balancing of three factors: (1) the private interest affected by the proceeding, (2) the risk of error created by the State's chosen procedure, and (3) the countervailing governmental interest supporting use of the challenged procedure.

*In re C.C.*, 788 N.E.2d 847, 852 (Ind. Ct. App. 2003), *trans. denied.* In termination cases, both the private interests of a parent and the countervailing governmental interests that are affected by the proceedings are substantial. *Id.* In particular, this termination action concerns Mother's interest in the care, custody and control of her child, which has been repeatedly recognized as one of the most valued relationships in our society. *Id.* Additionally, it is well settled that the right to raise one's child is an "essential, basic right that is more precious than property rights." *Id.* Thus, Mother's interest in the accuracy and justice of the proceeding is a "commanding" one. *Id.*

On the other hand, the State's *parens patriae* interest in protecting the welfare of the child is also significant. *Id.* "Although the State does not gain when it separates children from the custody of fit parents, the State has a compelling interest in protecting the welfare of the child by intervening in the parent-child relationship when parental

neglect, abuse or abandonment are at issue." *Tillotson v. Clay Co. Dep't of Family and Children*, 777 N.E.2d 741, 745 (Ind. Ct. App. 2002), *trans. denied*.

In support of her argument that the trial court abused its discretion in denying her request for a continuance, Mother relies on *Rowlett v. Vanderburgh Co. Office of Family and Children*, 841 N.E.2d 615 (Ind. Ct. App. 2006), *trans. denied*. In *Rowlett*, Father was incarcerated two months after his minor children were taken into protective custody and before he was ordered to perform any services. *Id.* at 618. Rowlett was still incarcerated at the time his parental rights were terminated, not providing him with the chance to participate in services. *Id.* At the scheduling conference, four months prior to the termination trial, Rowlett objected to the date set because he was to be released six weeks after the scheduled date of the hearing. *Id.* Then, a month later, still three months before the hearing, Rowlett filed a motion to continue, which was denied by the trial court. *Id.* On appeal, we found that Rowlett had made positive strides in turning his life around while in prison, including not using drugs, participating in a Therapeutic Community, participating in nearly 1,100 hours of individual and group services, and earning twelve hours of college credit. *Id.* at 619-20. Based on Father's improvement and the fact that continuing the hearing until sometime after Rowlett was released would have little immediate effect on the children as the plan was adoption by the maternal grandmother, we concluded that the trial court should have granted Rowlett's continuance. *Id.* at 620.

8

Likening her situation to *Rowlett*, Mother asserts that because she was released from incarceration a mere twelve days before the hearing on DCS's petition to terminate her parental rights, she did not have a meaningful opportunity to participate in services. As such, she contends that she was prejudiced and her procedural due process rights were violated.

We find *Rowlett* clearly distinguishable from Mother's case. First, unlike *Rowlett*, Mother waited until the day of the hearing to orally request a continuance. Furthermore, our review of the chronological case summary shows that this was already the second time Mother requested a continuance of the evidentiary hearing. Mother had made a first request to continue the evidentiary hearing on the DCS's termination petition scheduled for December 10, 2012. On that date, Mother failed to appear at the hearing and her counsel orally made the request on her behalf, which was granted by the trial court.

Second, while Rowlett was incarcerated during the entire pendency of the proceeding, Mother has been in and out of jail during the CHINS and termination procedures. Although Mother now complains that no services were available to her when she was released from incarceration on December 21, 2012 because the petition to terminate was pending, services were available to her during the times in between her multiple incarcerations. During those times, not only did she not avail herself of those services, she did not even initiate services.

In light of these facts, we cannot conclude that Mother's procedural due process rights were violated. Therefore, the trial court did not abuse its discretion when it denied her motion to continue the evidentiary hearing.

## II. *Sufficiency of the Evidence*

On appeal, Mother argues that the DCS did not produce sufficient evidence to support the termination of her parental rights to her minor child. We recognize that the Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. *In re J.S.O.,* 938 N.E.2d 271, 274 (Ind. Ct. App. 2010). A parent's interest in the care, custody, and control of his or her children is arguably one of the oldest of our fundamental liberty interests. *Id.* However, the trial court must subordinate the interests of the parents to those of the children when evaluating the circumstances surrounding a termination of a parent-child relationship. *In re J.H.,* 911 N.E.2d 69, 73 (Ind. Ct. App. 2009), *trans. denied.* Parental rights may therefore be terminated when the parents are unable or unwilling to meet their parental responsibilities. *Id.*

In reviewing termination proceedings on appeal, this court must not reweigh the evidence nor assess the credibility of the witnesses. *Id.* We consider only the evidence that supports the trial court's decision and the reasonable inferences drawn therefrom. *Id.* Where the trial court has entered findings of fact and conclusions of law, we apply a two-tiered standard of review. *Id.* First, we determine whether the evidence supports the findings, and second, whether the findings support the conclusions of law. *Id.* In

deference to the trial court's position to assess the evidence, we set aside the trial court's findings and judgment terminating the parent-child relationship only if they are clearly erroneous. *Id.*

In the instant case, Mother challenges the trial court's conclusion of law terminating her parental rights because there was not sufficient evidence to prove that (1) the conditions that led to the removal of her child from the home would not be remedied or (2) the continuation of the parent-child relationship posed a threat to A.S.'s well-being. In order to terminate her rights, DCS was required to prove by clear and convincing evidence:

> (B) that one of the following [was] true:
>> (i) There [was] a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents [would] not be remedied.
>> (ii) There [was] a reasonable probability that the continuation of the parent-child relationship[s] [posed] a threat to the well-being of the child.
>> (iii) The child [had], on two (2) separate occasions, been adjudicated [] in need of services[.]
> (C) that termination [was] in the best interests of the child.

Ind. Code § 31-35-2-4(b)(2)(B), -(C); *Bester v. Lake Cnty. Office of Family and Children,* 839 N.E.2d 143, 148 (Ind. 2005). Clear and convincing evidence as a standard of proof requires the existence of a fact to "be highly probable." *Hardy v. Hardy,* 910 N.E.2d 851, 859 (Ind. Ct. App. 2009). It need not reveal that "the continued custody of the parents is wholly inadequate for the child's very survival." *Bester,* 839 N.E.2d at 148 (quoting *Egly v. Blackford Cnty. Dep't of Pub. Welfare,* 592 N.E.2d 1232, 1233 (Ind.

11

1992)). Rather, it is sufficient to show that the child's emotional and physical development are threatened by the parent's custody. *Id.*

When determining whether there is a reasonable probability that a parent will not remedy the conditions justifying a child's removal from the home, the trial court must judge a parent's fitness to care for his or her child at the time of the termination hearing. *Rowlett,* 841 N.E.2d at 621. The trial court must evaluate the parent's habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation of the child. *C.T. v. Marion Cnty. Dept. of Child Services,* 896 N.E.2d 571, 578 (Ind. Ct. App. 2008), *trans. denied.* DCS is not required to rule out all possibilities of change; rather, it need only establish "that there is a reasonable probability that the parent's behavior will not change." *Id.* (quoting *In re Kay L.,* 867 N.E.2d 236, 242 (Ind. Ct. App. 2007)). Moreover, the trial court may properly consider a parent's criminal history, drug and alcohol abuse, historical failure to provide support, and lack of adequate housing and employment. *Matter of D.G.,* 702 N.E.2d 777, 779 (Ind. Ct. App. 1998).

Here, the trial court focused on Mother's non-existent compliance with the dispositional decree and parental participation order, her repeated incarcerations, and her lack of visitation with A.S., with the exception of a single visit which took place on May 31, 2011. Mother failed to keep the family case managers informed of her location and the evidence reflects that she changed her address on a frequent basis while she continued to rely on others to provide her with housing, utilities, and transportation. The trial court also emphasized Mother's history of criminal conduct. Moreover, it should be noted that

12

at the time of the termination hearing, Mother had a pending criminal case, the disposition of which was unknown.

Mother now complains that she was never given the chance to participate in services. She notes that after her latest release, the DCS notified Mother that she was no longer eligible for services as the DCS's petition for termination of parental rights was pending. Despite the DCS's refusal to award her services, Mother points to her participation in AA/NA meetings and Moral Recognition Therapy. She also claims to have participated in a parenting class during her incarceration.

First, we note that we have previously established that a failure to provide services does not serve as a basis on which to directly attack a termination order as contrary to law. *In re E.E.,* 736 N.E.2d 791, 796 (Ind. Ct. App. 2000). Moreover, the classes Mother claims to have participated in since her release, amounted to a single AA/NA meeting on December 24, 2012 and the completion of one online therapy session on December 23, 2012. Furthermore, even though Mother had times when she was not incarcerated, she did not contact the DCS to get enrolled in services nor did she attempt to set up visitations with A.S.

In sum, we determine that the evidence supports the trial court's findings and the findings are sufficient to support the trial court's conclusion that the conditions leading to

the removal of A.S. from Mother's home would not be remedied.[2]  Therefore, we affirm the trial court's termination of her parental rights.

CONCLUSION

Based on the foregoing, we conclude that (1) the trial court did not abuse its discretion when it denied Mother's motion for a continuance and (2) the trial court's findings were sufficient to support its decision terminating Mother's parental rights to her minor child.

Affirmed.

KIRSCH, J. and C. J. ROBB concur

---

[2] Mother also challenges the trial court's conclusion of law terminating her parental rights because there was not sufficient evidence to prove that the continuation of the parent-child relationship posed a threat to A.S.'s well-being.  Because I.C. § 31-35-2-4(b)(2)(B) is written in the disjunctive, requiring that only one of the three conditions under section (B) be proved true by clear and convincing evidence, we do not need to reach Mother's second assertion concerning A.S's well-being.