**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Mar 20 2014, 9:16 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**THOMAS G. KROCHTA**
Evansville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ROBERT J. HENKE**
Deputy Attorney General

**DAVID E. COREY**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF: ) ) ) A.H. & J.H. (Minor Children), ) ) And ) ) D.T. (Father), ) ) Appellant-Respondent, ) ) vs. ) ) THE INDIANA DEPARTMENT OF CHILD SERVICES, ) ) Appellee-Petitioner. ) | No. 82A04-1307-JT-378 |

APPEAL FROM THE VANDERBURGH SUPERIOR COURT
The Honorable Brett Niemeier, Judge
Cause No. 82D01-1303-JT-21 & 82D01-1303-JT-22

**March 20, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

STATEMENT OF THE CASE

Appellant-Respondent, D.T. (Father), appeals the trial court's order terminating his parental rights to his minor children, A.H. and J.H. (Child or Children).

We affirm.

ISSUE

Father raises one issue on appeal which we restate as: Whether the evidence was sufficient to terminate the Father's parental rights.

FACTS AND PROCEDURAL HISTORY

Father and K.H. (Mother) are the biological parents of the minor Children, A.H., born December 30, 2004, and J.H., born on February 28, 2006. Mother and Father did not live together; instead, Mother lived with G.J. who was also the Children's custodian. On September 6, 2011, the Vanderburgh County Department of Child Services (DCS) received a report that the Children were being physically abused. The following day, on September 7, 2011, DCS initiated an investigation and discovered that G.J. had beaten the Children multiple times with a belt, and each Child had bruises on their bodies. DCS also asked Mother to take a drug test, and she tested positive for THC and cocaine. On September 13,

2011, DCS filed a petition alleging each Child to be in need of services (CHINS). The petition stated the following: G.J., beat A.H. regularly with a belt on her "buttocks, vaginal area, head and back", and that A.H. had "marks consistent with being hit with a belt." (Appellant's App. p. 33). J.H. had injuries on his face which had been caused by G.J. hitting him with a belt. Mother admitted G.J. beat her Children with a belt, and that the "the marks on areas other than their buttocks" resulted from the Children "trying to run from the belt." (Appellant's App. p. 33). Also, Father had "no significant contact" with the Children, and was absent at the initial hearing. (Appellant's App. p. 36). At the close of the hearing, the juvenile court found probable cause for the CHINS petition, and the Children were placed in foster care.

On November 30, 2011, a dispositional hearing was held, and at the close of the hearing, the juvenile court adjudicated the Children as CHINS based on Mother's cocaine use and also ordered the Children to remain in foster care. On January 11, 2012, Father appeared on record at the dispositional hearing, and at the close of the hearing, the juvenile court ordered that the Children remain in foster care. The order by the juvenile court also incorporated a parent participation plan, directing Father to successfully complete a variety of services in order to achieve reunification with his Children. Specifically, Father was required to:

    (1) Participate in parent guide programs
    (2) Obtain a substance abuse evaluation and follow treatment recommendations
    (3) Submit to random drug screens
    (4) Participate to supervised visitation
    (5) Participate in fatherhood initiative program.

 (DCS Ex.1 pp.6-7)

3

On July 11, 2012, Father appeared at a review hearing where the juvenile court held that it was in the Children's best interest to remain in foster care. On October 29, 2012, the State charged Father with criminal charges including: operating a motor vehicle after forfeiture of license for life, a Class C felony; resisting law enforcement, a Class D felony; resisting law enforcement, a Class A misdemeanor; reckless driving, a Class B misdemeanor; and failure to stop after an accident, a Class C misdemeanor. On January 29, 2013 following a plea agreement, the trial court convicted Father and sentenced him to serve a concurrent sentence of two years in the Department of Correction.

On January 23, 2013, the juvenile court held a periodic review hearing during which it found that Father had not complied with most of the court-ordered services. On March 7, 2013, DCS filed a petition to terminate Father's parental rights to each Child. On May 16, 2013, the juvenile court conducted a termination hearing. During the hearing, DCS presented evidence that Father had been incarcerated during the CHINS proceedings. Evidence was also introduced that Father had failed to successfully complete the stipulated court-ordered services. At the conclusion of the termination hearing, the juvenile court took the matter under advisement. On July 10, 2013, the trial court granted DCS's petition and terminated Father's parental rights.

Father now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

Father challenges that the juvenile court's conclusion of law terminating his parental rights to the Children, was not supported by sufficient evidence to prove that (1) the

4

placement of Children in his care and custody would not be remedied or that (2) the continuation of the parent-child relationship posed a threat to the Children's well-being.[1]

## I. *Standard of Review*

We recognize that the Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. *In re J.S.O.*, 938 N.E.2d 271, 274 (Ind. Ct. App. 2010). A parent's interest in the care, custody, and control of his or her children is arguably one of the oldest of our fundamental liberty interests. *Id.* However, the trial court must subordinate the interests of the parents to those of the children when evaluating the circumstances surrounding a termination of a parent-child relationship. *In re J.H.*, 911 N.E .2d 69, 73 (Ind. Ct. App. 2009), *trans. denied.* Parental rights may therefore be terminated when the parents are unable or unwilling to meet their parental responsibilities. *Id.*

In reviewing termination proceedings on appeal, this court must not reweigh the evidence nor assess the credibility of the witnesses. *Id.* We consider only the evidence that supports the trial court's decision and the reasonable inferences drawn therefrom. *Id.* Where the trial court has entered findings of fact and conclusions of law, we apply a two-tiered standard of review. *Id.* First, we determine whether the evidence supports the findings, and second, whether the findings support the conclusions of law. *Id.* In deference

---

[1] Because Father's arguments are focused towards the trial court's finding that it is unlikely the conditions leading to removal of his Children will not be remedied and that he poses a threat to his Children's well-being, we will focus our discussion on those two issues. Father doesn't specifically make an argument that termination was not in the Children's best-interest as per I.C. § 31-35-2-4(b)(2)(C). As such, we shall not address this argument.

to the trial court's position to assess the evidence, we set aside the trial court's findings and judgment terminating the parent-child relationship only if they are clearly erroneous. *Id.*

A. *Remedy of Conditions*

According to Father, DCS did not present clear and convincing evidence that the conditions that resulted in the Children being removed from his custody will not be remedied. DCS was required, under I.C. § 31-35-2-4(b)(2)(B), to prove by clear and convincing evidence that one of the following was true:

> (i) There [was] a reasonable probability that the conditions that resulted in the [Children's] removal or the reasons for placement outside the home of the parents [would] not be remedied.
> (ii) There [was] a reasonable probability that the continuation of the parent-child relationship[s] [posed] a threat to the well-being of the [Children].
> (iii) The [Children] [had], on two (2) separate occasions, been adjudicated [ ] in need of services [.]

Clear and convincing evidence as a standard of proof requires the existence of a fact to "be highly probable." *Hardy v. Hardy*, 910 N.E.2d 851, 859 (Ind. Ct. App. 2009). It need not reveal that "the continued custody of the parents is wholly inadequate for the child's very survival." *Bester v. Lake Cnty. Office of Family and Children,* 839 N.E.2d 143, 148 (Ind. 2005). Rather, it is sufficient to show that the child's emotional and physical development is threatened by the parent's custody. *Id.*

When determining whether there is a reasonable probability that a parent will not remedy the conditions justifying a child's removal from the home, the trial court must judge a parent's fitness to care for his or her child at the time of the termination hearing. *Rowlett v. Vanderburgh Cnty. Office of Family and Children,* 841 N.E.2d 615, 621 (Ind. Ct. App. 2006). The trial court must evaluate the parent's habitual patterns of conduct to determine

6

whether there is a substantial probability of future neglect or deprivation of the child. *C.T. v. Marion Cnty. Dept. of Child Services*, 896 N.E.2d 571, 578 (Ind. Ct. App. 2008), *trans. denied.* DCS is not required to rule out all possibilities of change; rather, it need only establish "that there is a reasonable probability that the parent's behavior will not change." *Id.* (quoting *In re Kay L.*, 867 N.E.2d 236, 242 (Ind. Ct. App. 2007)). Moreover, the trial court may properly consider a parent's criminal history, drug and alcohol abuse, historical failure to provide support, and lack of adequate housing and employment. *Matter of D.G.,* 702 N.E.2d 777, 779 (Ind. Ct. App. 1998).

In determining that there was a reasonable probability the conditions resulting in Children's removal and continued placement outside Father's care would not be remedied, the juvenile court made the following conclusion:

> There is [a] reasonable probability that the conditions, which resulted in the removal of [A.H.] and [J.H.] from the care of [Mother and Father], will continue to cause [A.H.] and [J.H.] to have placement outside the care and custody of [Mother and Father] and will not be remedied because, [Father] is incarcerated, failed to complete any services, and had not previously kept the children safe. [Father] has done little or nothing to suggest that he is sufficiently motivated or capable of raising two children.

(Appellant's Br. p. 46)

Our review of the record reveals there is clear and convincing evidence supporting the juvenile court's conclusion. When the Children were physically removed from Mother in September 2011, Father, who was never present in the Children's lives, was unavailable to parent his Children. The record also indicates that Father appeared to be involved with his Children only after the CHINS proceedings had commenced. Furthermore, Father was incarcerated at the time of the termination hearing, and was therefore unavailable to parent

7

his Children. The record also reveals that Father continued his life of crime, and in October 2012, Father was convicted of additional charges which led to his incarceration. Moreover, Father would not be available to attempt to care for his Children until his release from incarceration.

We further observe that at the time of the termination hearing, Father had failed to complete the majority of the court-ordered services. Out of thirteen drug screens, Father had only appeared on four occasions and had tested positive for cocaine and methamphetamine. Father had also failed to meet with his father engagement liaison. While we acknowledge and commend Father's efforts to improve himself while incarcerated, his ability to remain sober, to obtain legal employment, to obtain proper housing, and to properly parent his Children once released back into the real world remains unknown.

As noted above, a trial court must judge a parent's fitness to care for his or her child at the time of the termination hearing, taking into consideration the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child. *C.T.,* 896 N.E.2d at 578. Here, at the time of the termination hearing, Father was incarcerated, not eligible for release until February 2014 at the earliest, and unable to demonstrate that he would be capable of providing his Children with a safe and stable home upon his eventual release from incarceration.

This court has repeatedly recognized that "[i]ndividuals who pursue criminal activity run the risk of being denied the opportunity to develop positive and meaningful relationships with their children." *Castro v. State Office of Family & Children,* 842 N.E.2d

367, 375 (Ind. Ct. App. 2006), *trans. denied*. Based on the foregoing, we find that Father's unsubstantiated assertions on appeal amount to nothing more than an invitation to reweigh the evidence, which we may not do. *In re J.H.*, 911 N.E .2d at 73. In this regard, we cannot say the juvenile court committed clear error when it found there was a reasonable probability Father will be unsuccessful in maintaining safe care and custody for his Children.

## II. *Children's Well-Being*

We next consider Father's assertion that DCS failed to prove that the relationship with his Children posed a threat to the Children's well-being. Father argues that he is rehabilitated and that he has formed a bond with his Children during the court-ordered visits. He therefore maintains there was insufficient evidence that his relationship with the Children posed a threat to their well-being.

Based on our review of the record, we cannot agree with Father's assertions. The evidence reveals ample support for finding that Father's involvement with the Children posed a threat to the Children's well-being. The record shows that Father was a drug user. During the CHINS proceeding, he tested positive for methamphetamine and cocaine. We agree with the juvenile court's finding that "[i]t remains to be seen whether he will ever be able to stop using drugs..." (Appellant's App. p. 45). The inevitable conclusion that, when Father abuses drugs, he endangers his Children in a variety of ways is clearly not erroneous. In addition, the record also shows that Father drove his Children with an invalid driver's license "knowing he could be arrested in front of the children." (Appellant's App. p. 45).

As such, we disagree with Father's assertion that he has been rehabilitated since his incarceration, thus, he does not pose a threat to his Children's well-being. We note that the time for parents to rehabilitate themselves is during the CHINS process, prior to the filing of the petition for termination. *Prince v. Dept. of Child Services*. 861 N.E.2d 1233, 1230 (Ind. Ct. App. 2007). Although expressing a desire to be re-united with his Children, Father was given the opportunity to make that happen. In the instant case, Father choose not to cooperate with the court-ordered services. He instead continued his life of crime and was incarcerated.

Based on the foregoing, we conclude that the trial court did not err in finding that there was reasonable probability that continuation of the parent-children relationship posed a threat to the Children's well-being.

## CONCLUSION

Based on the foregoing, we conclude that the trial court properly terminated Father's parental rights to the Children.

Affirmed.

MAY, J. concurs

VAIDIK, C. J. concurs in result